STATE OF IOWA V. F. S. RIVERS, Appellant.

Forgery: EVIDENCE. On a prosecution for forgery, where the defense was authority as agent to sign the principal's name to a note on which to realize money to pay the agent for services performed, evidence as to the length of the agent's employment, offered prior to a showing of authority to execute the note, was immaterial.

Exclusion of evidence: PREJUDICE. The exclusion of testimony which in substance is afterward covered by the witness, is not prejudicial.

Evidence: AUTHORITY OF AGENT. Where the defense to a prosecution for forgery is authority to sign the principal's name, evidence of service performed by the agent not tending to show authority is immaterial.

Instruction: IMPLIED AGENCY. An agent has implied authority to sign his principal's name to a note, only when indispensable to the accomplishment of his agency and reasonably within the contemplation of the parties. Under the showing made in this case, an instruction embodying the above rule is held correct.

Instructions: REASONABLE DOUBT. Where the charge to the jury in different paragraphs emphasized the necessity of proof beyond a reasonable doubt, the inadvertent use of the phrase "preponderance of evidence" in another paragraph, while unfortunate, could not have mislead the jury.

*Appeal from Dallas District Court.*— HON. J. H. APPLE-GATE, Judge.

THURSDAY, MARCH 10, 1904.

DEFENDANT was convicted of the crime of forgery, and appeals.— *Affirmed.*

*Shortley & Harpel,* for appellant.

*Chas. W. Mullan,* Atty. Gen., and *Lawrence De Graff,* Asst. Atty. Gen., for the State.

LADD, J.— In August, 1902, the accused indorsed to Brenton Bros.' Bank, at Granger, a promissory note purporting to have been executed to him by his mother, J. A. Rivers,

1. EVIDENCE.

and a brother-in-law, J. A. Falway, for seventy-five dollars, and received therefor a note of twenty-five dollars of his own to the bank, and the balance, save interest, in money. In so doing, he represented that the note had been executed for an indebtedness due him. Neither Falway nor Mrs. Rivers had signed the instrument, but the evidence tended to show that defendant had attended to some business for them after their departure for South Dakota, and that, upon request of payment for such services, they had responded by letter that "they were hard up, and to go to the Granger Bank and get the money there; that they could get all they wanted there, and for him to go and get it, and they would make it all right after a while; * * * that they had got all the money they wanted there on their notes, and we could get it that way." The accused also testified that, to cover expenses in procuring a purchaser for their farm in South Dakota, they had told him, and also written him, "to go to the Granger Bank and get the money." The defendant's wife, after stating that he had attended to the business of Falway and Mrs. Rivers, was asked how much time he had given to this, within five or six months after their departure. An objection that this was incompetent and immaterial was sustained, and we think properly. No evidence whatever of authority to sign the note had been introduced at that time.

Subsequently it appeared that she had written the note and attached Mrs. Rivers' name to it; and the defendant,

2. EXCLUSION OF EVIDENCE: prejudice.

that of Falway. She testified that she did so under what she supposed to be authority in the letters, and was then asked: "Did you have any intent at

the time of writing the note to defraud anybody?" A. "No, sir." The State then objected as "incompetent and immaterial." The objection was sustained, and she testified later that "the note was signed for the purpose of getting money, as directed in the letters." If the effect of this ruling was to exclude the answer, it was without prejudice, as her testimony given afterwards negatived any imputation of a fraudulent intent on her part.

II. The defendant sought to show what effort he had put forth to sell the land of Falway and Mrs. Rivers about the time the note was negotiated, and whether he had arranged

3. EVIDENCE: authority of agent.

with another to aid him in procuring persons to go to South Dakota to inspect the land with the view of buying. Such evidence was properly excluded, as it in no way tended to show authority to sign or dispose of the note. For the same reason, objections to certain questions propounded to the witness Bryant were properly sustained. Exception is also taken to the sustaining of an objection to the following question: "Q. Now, Mr. Bryant, I will ask you what you know in reference to Mr. Rivers being employed by Mr. Falway and Mrs. Rivers in attending to their business, and in taking care of their stock, and selling their property and lands, and taking parties to Dakota in an effort to sell their lands." The witness may have known a great deal concerning these four independent subjects wholly irrelevant to the issues in this case, and there is nothing in the record to indicate that what he did know was material and competent.

III. After defining the crime of forgery, and saying that the mere fact that Falway and Mrs. Rivers might have been indebted to defendant would not justify the making of the

4. INSTRUCTIONS: implied agency.

note, the court proceeded: "You are further instructed that, even though you may believe from the evidence that the said J. A. Falway and the said J. A. Rivers instructed the defendant to procure money at the bank of Granger, that would not of itself authorize the de-

fendant to execute a note by signing the name of J. A. Falway and J. A. Rivers thereto, unless you believe from the evidence, and from all of the facts and circumstances disclosed by the proof, that it was understood and contemplated by the parties that the money should be procured from said bank by the defendant by the execution of such note." This is criticised as excluding the power to do whatever might have been necessary to execute his alleged agency in borrowing of the bank. But it is to be remembered that no claim is made that any specific amount was mentioned by Falway or Mrs. Rivers orally or in the letters. The indebtedness, if any, existing and to be created, was unliquidated. It was to the defendant himself. If expenses were to be incurred in selling their land, these were for defendant's benefit as well as theirs, for he was to be paid a commission. Moreover, the defendant was payee in the note, and claimed to the bank, not that he was acting as agent, but that it had been given to him by the makers. Whether it was understood that he could get the money of the bank on their account or his own was at least doubtful. Directing him generally, then, to get money of the bank, under these circumstances, ought not to be construed, as a matter of law, to authorize him to sign their names to the note; and the understanding of the parties, and what was contemplated by them, was a material inquiry on the trial. While an agent may have implied authority to sign his principal's name to a note, this is only when practically indispensable to the accomplishment of his agency. *Edgerly v. Cover,* 106 Iowa, 670. The authority of the agent is never to be implied unless reasonably within the contemplation of the parties, and this is manifestly the rule of this instruction, and, as applied to the evidence, was correct. It should be added that Falway denied having given defendant authority to use his name, the letters were lost, and Mrs. Rivers was not called as a witness. Other criticism of the instructions ignore the thought that all are to be considered together. Thus, regardless of

authority to sign, the court, in the eighth paragraph, advised
the jury that if Falway and Mrs. Rivers directed defend-
ant to procure money of the bank, and what he did was
done in good faith and without intent to defraud, he should
be acquitted.    The matter of authority had already been
covered, and the manifest purpose of the instruction was to
guard against conviction, even in its absence, if defendant
in good faith acted in the belief that he was authorized to
sign their names.

Again, as part of the fifth paragraph, the court in-
structed:  " If you find from the evidence, beyond a reason-
able doubt, that said note is a forged instrument, and you

5. INSTRUCTIONS: further find from the evidence, beyond a rea-
reasonable
doubt.        sonable doubt, that the defendant uttered said
note, and published same as true, knowing that same
was false or forged, with intent to defraud, then he is
guilty of the crime of uttering a forged instrument, as
charged in the indictment; but if you fail to find from the
preponderance of the evidence either that said instrument
was a forged instrument, or that the defendant uttered and
published said note as true, knowing the same to be false or
forged, with intent to defraud, then you should find the de-
fendant not guilty, and so return your verdict."    The ques-
tion arises, what was to be done with the defendant if the
jury failed to find beyond a reasonable doubt that the in-
strument was forged and uttered with intent to defraud,
and yet so found from a preponderance of the evidence?
Certainly they were not in that event told to convict.    If
this might be inferred, such a construction was obviated by
the ninth instruction, in which they were instructed that if
a reasonable doubt was entertained as to whether, in making
or uttering the note, the defendant acted with fraudulent
intent, he should be acquitted.    The necessity of proof of
guilt beyond a reasonable doubt was further emphasized
in the fourth instruction.    The use of the expression " pre-
ponderance of evidence " was evidently by oversight and

inappropriate, but the jury could not have been misled by it. The verdict is supported by the evidence. Other exceptions are without merit.—AFFIRMED.