THOMAS GROCHOWSKI, APPELLEE, V. MICHAEL GROCHOWSKI ET AL., APPELLANTS.*

FILED NOVEMBER 10, 1906. No. 14,467.

1. Contract: VALIDITY. A promise made in consideration of an agreement to refrain from resisting the probate of a will is not void as against public policy where no persons or interests other than the persons and interests of the contracting parties are prejudicially affected thereby.

2. ——: SPECIFIC PERFORMANCE. Such a promise is not without consideration and will be enforced.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Rehearing denied. See opinion, p. 510, *post.*

*R. E. Evans,* for appellants.

*A. R. Oleson, contra.*

JACKSON, C.

On February 25, 1897, John Grochowski died leaving a will by the terms of which he bequeathed $100 to St. Mary's Catholic Church at West Point, $15 to his son Thomas Grochowski, $200 to each of the five children of Thomas Grochowski, $1,000 to his grandson Mike Grochowski, $1,500 to his daughter Mary, and the remainder of his estate, including a farm of 160 acres, to his son Michael Grochowski, on the condition that the son Michael provide for the widow of the deceased during her lifetime. The son, Michael Grochowski, was appointed executor of the will. The will was proposed for probate in the county court of Cuming county, and the son Thomas appeared with his attorney for the purpose of contesting the will. Negotiations between the brothers, Michael and Thomas Grochowski, led to the following written contract: "Whereas, John Grochowski, in the seventh item of his last will and testament, bequeathed his farm, consisting of 160 acres, to his son Mike Grochowski upon certain conditions therein stated, and, whereas, said will was on this day offered for probate in the county court of Cuming county, Nebraska, and, whereas, Thomas Grochowski objected to the probate of said will: Now, therefore, for the purpose of avoiding litigation it is hereby agreed by and between the said Mike Grochowski and Thomas Grochowski that the said Thomas Grochowski withdraw all objections to the probating of said will and in consideration thereof that said Mike Grochowski hereby agrees with the said Thomas Grochowski that he will fulfil all the conditions and stipulations contained in the said seventh item in the last will and testament of the said John Grochowski, and after the death of their mother named in said item, he will divide whatever is left of the

farm named in said item or from the proceeds of the sale thereof with the said Thomas Grochowski, but said property is not to be sold by the said Mike Grochowski, unless it is necessary to do so for the purpose of supporting their mother in the manner provided in said seventh item of said will, unless with the consent of said Thomas Grochowski. Dated at West Point, April 5, 1897. Chas. McDermott, P. F. O'Sullivan, Peter Hasler, Mike Grochowski, Thomas Grochowski." The widow of John Grochowski died in 1902, and on February 24, 1903, this action was instituted by the plaintiff to enforce a specific performance of the contract with his brother Michael.

In the petition it was alleged that the contract, as agreed upon between the parties, included the residue of the personal estate of the deceased as well as the 160 acre farm, but by mistake of the scrivener the personal estate was omitted from the written agreement, and the prayer included a request for a reformation of the contract, an accounting of the personal estate, and the conveyance of an undivided one-half interest in the land. In the answer it is alleged that Mary Grochowski, daughter of the deceased and one of the legatees, was at the death of her father, and still is, an insane person, that she took no part in the compromise and settlement between the brothers, Thomas and Michael Grochowski, and for that reason the compromise and agreement between the brothers was void as against public policy; that the contract was without consideration; that the estate had not been fully settled, and the action was prematurely brought. At the trial, and after the plaintiff had rested, the defendant was permitted to amend his answer. In the amendment it was charged that the actual agreement between the brothers, Thomas and Michael Grochowski, was that in consideration of the withdrawal of the objections to the probating of the will by the brother Thomas, and an agreement by Thomas Grochowski to care for and keep their mother one-half of the time during the remainder of her life, the defendant would upon the death of the mother convey

one-half interest in the farm to the plaintiff; that by mistake the scrivener omitted the provision providing for the care of the mother one-half of the time by the plaintiff; and the prayer included a request for the reformation of the contract to that effect. It was alleged that the plaintiff had neglected and refused to perform the conditions of the contract on his part, and had never contributed toward the support of the mother; by reason of such refusal the defendant had been compelled to provide and had provided for the mother at his own expense. The decree of the district court gave the plaintiff an undivided one-half interest in the real estate and quieted the title in him to that extent. The court found specifically that in consideration of the care of the widow and the expenses incident to her maintenance the defendant was entitled to hold and receive all of the moneys and other property of the estate of the deceased received by him, and the rents of the real estate to March 1, 1905, and taxed the costs, one-half to each litigant. The defendant appeals.

The claim that the compromise and contract is void as against public policy does not seem to be well taken. It appears from the evidence that, while the contract was drafted in a law office in the city of West Point, yet it was revised and signed in the office of the county judge of Cuming county where the probate proceedings were then pending. A clerk in the county judge's office assisted in revising the agreement at the suggestion of the parties, and presumably the adjustment of the entire matter was had with the knowledge of the county judge. The rights of no persons other than the contracting parties were prejudicially affected, nor did the settlement affect the due administration of justice. There is no evidence of a connivance to defeat or defraud the insane sister of any of her rights. She was not a necessary party to the agreement, and we find no reason for disturbing the decree of the trial court in so far as it sustains the validity of the contract and the terms thereof as contended for by the plaintiff.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed May 10, 1907. *Rehearing denied:*

1. **Contract: Validity.** A contract whereby one interested in defeating the probate of a will agrees to interpose no objection thereto is not void as against public policy, unless made collusively and in fraud of other parties interested in the estate.

2. ———: **Consideration.** Where opposition to the probate of a will is made by such party in good faith, a withdrawal of such opposition is a valid consideration for a promise on the part of one interested in sustaining the will.

3. **Evidence** examined, and *held* sufficient to entitle the plaintiff to a decree.

Albert, C.

This case is before us on rehearing. The former opinion is reported *ante,* p. 506, where the facts involved and the issues raised by the pleadings are stated at some length. It is again strenuously contended that the contract is void as against public policy. Authorities are not wanting to sustain that contention, but we think the better considered cases are the other way. *Seaman v. Colley,* 178 Mass. 478, 59 N. E. 1017, is similar in some respects to the case at bar. In that case the plaintiff and others contested the probate of a codicil to a will, and the findings of the lower court that the codicil was procured by the undue influence of the defendant was set aside. When the case was called for a new trial plaintiff, in consideration of defendant's agreement to pay him $500, withdrew his opposition, and without knowledge of the agreement the court admitted the codicil to probate. The only other interested party was a weak-minded son of the testator. There was no evidence of any connivance between the parties to defraud the testator's son or that he was influenced by the plaintiff's withdrawal of his oppo-

sition to the probate of the instrument.  On appeal to the supreme judicial court it was held that the agreement was not void as against public policy.  In the body of the opinion the court said:

"The other next of kin was a weak-minded son of the testator, who was under guardianship, but it does not appear that his conduct or that of any other person than the parties to the bargain was influenced, or was expected or even likely to be influenced, by the plaintiff's course. It does not appear that the other parties to the appeal were not informed of the plaintiff's arrangement and of the motives which induced his change.  *  *  *  The will and codicils are not before us, and it does not appear that there was any other interest to be affected.  The only ground on which it can be argued that the bargain was against public policy is that such bargains cannot be made without informing the court, for, if the matter had been known to everyone, it would be absurd to say that the plaintiff was not free to consult his own interest in opposing or withdrawing opposition to the codicil, as well for money as without it.  Indeed such arrangements as the present have been said to be entitled. to the highest favor of the courts."  Citing *Leach v. Fobes,* 11 Gray (Mass.), 506.  See also *Rector, Church Wardens and Vestrymen of St. Mark's Church v. Teed,* 120 N. Y. 583, 24 N. E. 1014; *Barrett v. Carden,* 65 Vt. 431, 36 Am. St. 876; *In re Estate of Garcelon,* 104 Cal. 570, 43 Am. St. 134.

In the case at bar, as in the Massachusetts case, one of the heirs at law was a feeble-minded child of the testator. In the Massachusetts case it was said that "it does not appear that his (the weak-minded son's) conduct  *  *  * was influenced, or was expected, or even likely to be influenced by the plaintiff's course."  In the case at bar the contract was made in the presence of the court.  It was made openly and without any effort at concealment.  We cannot presume that the court would be a party to any arrangement that would operate as a fraud on the weak-minded sister or any other person interested in the estate.

That being true, we know of no rule of public policy requiring us to hold the contract void and of no effect

Another contention of the appellant is that the contract was without consideration. The argument in support of this contention proceeds on the theory that at the time the contract was made the plaintiff had no valid ground for opposition to the probate of the will, and that the ground upon which he did oppose it was so obviously untenable that there could be no difference of opinion among reasonable men with respect to it. At the time the contract was made the plaintiff had filed no formal objection to the probate of the will. The objection that he made orally to the court and in his conversations with the defendant was that he had been "slighted" and was entitled to a greater share of the testator's estate. It appears to have been made in good faith. The grounds upon which he based this objection are not very definite. His position at the time was not that of one who had entered a contest, but of one who contemplated doing so. That presupposes examination and investigation. It does not necessarily presuppose examination and investigation to defeat the will in its entirety, but to modify the provisions of the will relating to himself on the ground of mistake or for some other reason. By the contract in question the plaintiff agreed, in effect, to forbear such investigation and to allow the will, so far as he was concerned, to be admitted to probate without objection. The case in this respect does not differ in principle from one where the line between adjoining landowners is indefinite and uncertain, and the parties to avoid the expense of investigation agree upon and establish a boundary. In such case the line agreed upon will be sustained, although it may be subsequently found to vary from the true line. *Lynch v. Egan,* 67 Neb. 541. In the case at bar, as in the case just cited, the rights of the parties to the contract were uncertain, and could be ascertained only at considerable expense and inconvenience to each of them. To avoid such expense and inconvenience they entered into the contract in suit, the plain-

tiff agreeing to forbear opposition to the probate of the will, and the defendant, in consideration thereof, to make a division of the real estate after the mother's death. The promise of each was a sufficient consideration for the other.

The defendant further contends that the contract found by the court is not the contract pleaded by the plaintiff nor the one shown in evidence. The finding upon which this contention is based is as follows: "The court further finds that, in consideration of the care of his mother and the expenses incident to her maintenance and all other expenses incident thereto by the said Mike Grochowski, the said Mike Grochowski is entitled to hold and receive all the moneys and other property of the estate of John Grochowski received by him, and the rents by him received to March 1, 1905, upon said described premises, and that the same shall be in full of all claims against said estate and Thomas Grochowski by reason of such expense in connection with the care and maintenance of their said mother." With respect to this finding the plaintiff says in his brief: "The court takes an accounting from only a partial statement of the condition of the estate of John Grochowski, deceased, and assigns the entire personal estate to the defendant to pay for the care of the mother, and then assigns a one-half interest in the farm to the plaintiff. Where is the warrant for such a decree? In order to understand the finding just quoted, it should be kept in mind that the plaintiff was asking a reformation of the contract to include the residue of the personal estate of the testator, as well as the land described in the contract. The defendant claimed that the actual contract between himself and the plaintiff contained a provision to the effect that they should jointly provide for their mother. This was denied by the plaintiff. The defendant is the residuary legatee. Item seven of the will expressly imposes upon the defendant the duty of providing for the wife of the testator, who is the mother of the parties to

36

this suit. The written contract between the parties expressly provides that the defendant will fulfil all the conditions of that item of the will, and after the death of the mother "will divide whatever is left of the farm named in said item, or the proceeds of the sale thereof," with the plaintiff, but that the land is not to be sold unless necessary for the support of the mother. To our minds the contract clearly contemplates that the mother should be supported out of the income derived from the land or, in case that should be insufficient, out of the proceeds realized from the sale thereof. The evidence shows that the rents and profits were sufficient for that purpose. While it would appear from the finding of the court with respect to the residue of the personal estate that it was awarded to the plaintiff in consideration of his support and maintenance of the mother, it was in fact intended to dispose of the plaintiff's contention that by the terms of the actual contract between himself and the defendant he was to share in the residue of the personal estate.

Another contention of the defendant is that the district court was without jurisdiction, because the case involved the settlement of the accounts of an executor. The court was not attempting to settle the accounts of the executor, but, as we have already seen, to dispose of the plaintiff's contention that he was entitled to an equal share with the defendant in the residue of the personal property, and to ascertain the expense incurred by the defendant in supporting the mother according to the provisions of the will in order to make a just distribution of the real estate according to the terms of the contract between the parties.

Another claim put forward by the defendant is that the suit was prematurely brought, because there had been no final settlement of the testator's estate. This suit involves certain real estate. It affects only the parties to it. The record shows that all the debts of the estate have been paid, and that the personal estate is ample to pay the bequests under the will and all expenses of administration. It will not be necessary, therefore, to resort to the real

estate. By the terms of the contract the real estate was to be divided between the parties to this suit on the death of the mother, and she had died before the suit was instituted. On this state of facts there was no occasion for delay, and, as the suit binds only the parties to the record and their privies, there is no danger that others will suffer by the decree.

The evidence to sustain the decree is ample and convincing. We see no escape from the conclusion reached by the district court, and we therefore recommend that the motion for rehearing be overruled.

JACKSON, C., concurs.

By the Court: Motion for rehearing

OVERRULED.