KORTE et al., Respondents, v. O'NEILL et al., Appellants.

(148 N. W. 12.)

**1.  Specific Performance—Oral Agreement—Definiteness and Certainty, Sufficiency of—Statute.**

An oral agreement between plaintiffs and defendants, sisters, under which defendants, in consideration of a dismissal by plaintiffs of a will contest, agreed to convey to plaintiffs, whenever the realty should be set over by probate decree, two specified quarter sections of land, a particular town lot, and $800. in money or note, was sufficiently definite and certain in terms to permit of specific performance, under Civ. Code, Sec. 2344.

**2.  Specific Performance—Reformation of Contract—Oral Evidence to Aid Writing, or Assist Reformation, Admissibility.**

In an action for reformation of a contract concerning realty, and the specific performance thereof, after reformation, **held,** that if oral evidence tending to identify the land described was admissible, either to aid in interpretation of its language, or as a basis for reformation of the writing, its admission was not reversible error.

**3.  Same—Intent to Use Language—Meaning of Language Used—Rule of Evidence.**

In determining whether a writing should be reformed, the question whether the parties intended to use the language of the writing is very material; while, in interpreting the writing, the meaning or sense of the words used is the proper subject of inquiry.

**4.  Evidence—Parol—Specific Performance—Interpretation of Contract—Meaning of Words—Admissibility.**

In an action for specific performance of a written contract concerning land, **held,** proper to admit parol evidence tending to prove the sense or meaning in which words were used.

**5.  Reformation of Instruments—Indefinite Words—Grounds of Reformation.**

Where words in a writing are so indefinite and uncertain that their meaning or sense cannot be established by oral testimony, the parties may have the writing reformed so as to show the real agreement entered into, where such agreement itself was sufficiently certain.

**6.  Reformation of Instruments—Oral Agreement Reduced to Writing—Mistake of Law in Drafting.**

Parties, after having orally agreed on the terms of a contract relating to land, the terms of which were sufficiently definite to permit specific performance, "intended" or "willed" to reduce it to writing, which would have rendered it a valid

contract as regards specific performance, but, owing to a mistake or misapprehension of the parties and the draftsman as to the law, the description of the lands contained therein was insufficient, rendering it unenforceable. **Held,** that a court of equity will reform the instrument.

7. **Same—Grounds—"Mistake of Law"—Statute.**

Against "mistake," as defined by Civ. Code, Sec. 1207, declaring that a mistake of law constitutes a mistake within the article only when arising from a misapprehension of the law by all parties, equity does and should grant relief.

8. **Specific Performance—Two Contracts in One—Immaterality of One—Consideration—Mutuality.**

Where a writing contained two contracts, the one between plaintiffs on one side and the defendants on the other, and the other between two defendants, **held,** that plaintiffs, having performed their part, were entitled to performance by defendants of their covenants, regardless of whether the contracts between defendants had been performed, though the consideration of such agreement may have been the performance of one or more covenants in their contract with plaintiffs; and such contract is mutual. So **held,** under Civ. Code, Sec. 2340, prohibiting specific performance unless the party seeking enforcement is himself compellable to perform, etc.

9. **Statute of Frauds—Part Performance to Obviate Statute—Application of Statute.**

While the rule that, in order for part performance to take an oral agreement out of the statute of frauds, such part performance must be referable to contracts concerning which evidence of part performance would in itself be evidence of a contract upon which it was based, applies where there is no written evidence of the contract, it cannot prevail where there is a writing signed by the parties establishing that the part performance was in compliance with the agreement of the parties. So **held,** where the writing itself was invalid as being indefinite, but the oral contract, partly performed, was enforceable.

10. **Contract—Dismissal of Will Contest—Consideration, Sufficiency of.**

The dismissal of a will contest and a promise to refrain from instituting another, was a sufficient consideration for promises by devisees thereunder to convey land, being part of the devised estate; the purpose of the agreement being to effect settlement of a dispute among members of decedent's family.

McCoy, J., taking no part in the deceision.

(Opinion filed July 6, 1914. Rehearing pending.)

Appeal from Circuit Court, Brown County. Hon. CARL G. SHERWOOD, Judge.

Action by Sarah R. Korte and another against Laura M. O'Neill and others, for reformation of a written agreement for conveyance of realty, and for specific performance of such covenants. From a decree in favor of plaintiffs, and from an order denying a new trial, defendants appeal. Affirmed.

*Williamson & Williamson*, for Appellants.

*L. W. Crofoot*, and *E. C. Ryan*, for Respondents.

(1) Under point one of the opinion, Appellants cited:

2 Kent, 511, 12th Ed.; Hamilton v. Ogee, 62 Pac. 710; 4 Am. & Eng. Ency. Law, 759, 802; Hollenbeck v. Prior (Dak.), 40 N. W. 347; Brandon v. Leddy (Cal.), 7 Pac. 33; 3 Wash. Real Prop. (4th Ed.), 381; 1 Wood, Convey. 206; Pomroy on Specific Performance of Contracts, Sec. 161; Baldwin vs. Kulin, 46 Ind. 426.

(2) Under point two of the opinion, Appellants cited:

Shumway v. Kitzman (S. D.), 134 N. W. 325; Pitcher v. Hennessey, 48 N. Y. 423; Phelan v. Neary, 22 S. D. 265, 117 N. W. 142; Shumway v. Kitzman, *supra*; Sections 1238 and 1311, Civil Code.

(3) Under point three of the opinion, Appellants cited:
Sec. 1248, Civil Code.

(7) Under point seven of the opinion, Appellants cited:

Hughes v. Payne (S. D.), 130 N. W. 81; 34 Cyc. 905, 927, note 61; Regan v. Bruff, 108 S. W. 185.

Respondents cited:

Civ. Code, Secs. 2349, 2350, 2351, 2352; 2 Pomeroy's Equity Jurisprudence, Sec. 859 (1st Ed.).

(8) Under point eight of the opinion, Appellants cited:

Sec. 2340, C. C.; Sub. 3, Sec. 2344, C. C.; Lawson on Spec. Perf. Con., Secs. 149, 304-9, 152, 90, 162-6; Mannings v. Ayers, 77 Fed. 690; Hopkins v. Gillman, 22 Wis. 454; Jollifee v. Steele, 98 Pac. 544; Luciner v. Duff, 95 Pac. 914; Moody v. Howe (S. D.), 97 N. W. 841; Miller v. Tjexhus (S. D.), 104 N. W. 519.

Respondents submitted that: Sec. 2340, Civ. Code, is not applicable, and cited:

Pomeroy on Contracts, Specific Performance, Sec. 309; 36 Cyc. Title, Specific Performance; U. P. R. Co. v. Chicago, etc.,

R. Co., 163 U. S. 364; 36 Cyc., p. 597, Title: Specific Performance.

(9) Under point nine of the opinion, Appellants cited:

Lawson, Spec. Perf. Con., Sec. 108.

(10) Under point ten of the opinion, Appellants cited:

Buttz v. Colton (Dak.), 43 N. W. 717; Williams v. Morris, 95 U. S. 457; Regan v. Regan (Ill.), 61 N. E. 842, and other cases; Wheeler v. Reynolds, 66 N. Y. 227; Flood v. Templeton, 83 Pac. 148; Gravis v. Goldthwaite, 26 N. E. 860; Traphagen v. Kirk (Mont.), 77 Pac. 58.

Respondents cited:

Seaman v. Seaman, 21 Wend. 381 (N. Y.); Rector, etc., v. Teed, 120 N. Y. 583; Palmer v. North, 35 Barb. (N. Y.) 293; Bedell v. Bedell, 3 Hun 383; Blount v. Dillaway et al., 85 N. E. 477 (Mass.); Waller's Admrx. v. Marks et al., 38 S. W. 894 (Ky.); Grochowski v. Grochowski, 109 N. W. 742 (Nebr.).

WHITING, J.   Plaintiffs, in their complaint, sought the reformation of a written agreement wherein defendants covenanted to convey real property to them; they also sought the specific performance of such covenants.  Trial was had to the court without a jury; findings and conclusions—finding that through mutual mistake the writing did not express the agreement of the parties and that the same should be reformed to express such agreement and, as so reformed, should be enforced—were entered; judgment was renreded in conformity with such findings; motion for new trial was denied; and defendants appealed to this court from the judgment and from the order denying a new trial.

The written agreement, so far as material to the issues before us, was in words and figures as follows:

"We, Mrs. Rose L. Swengel, Laura M. Zimmermann, Mrs. Sarah R. Korte and Mrs. Esther M. Korte agree among ourselves * * * to the following agreements as to the contest of the late John G. Zimmermann's will.

"First: That Mrs. Sarah R. Korte and Mrs. Esther M. Korte agree to withdraw the pending contest to the late John G. Zimmerman's last will, and further agree not to take either collectively or separately in any subsequent contest, nor in any way aid any one else in contesting or delaying the execution of the said will. That they immediately withdraw the pending contest now pending in Winona, Minn., where the will is now pending probation.

"Secondly: That Mrs. Rose L. Swengel and Miss Laura M. Zimmermann agree to deed free of all incumbrance the Rondell ¼ Sec. as also the Westport ¼ Sec. to Mrs. Sarah R. Korte and Mrs. Esther M. Korte, who are to have and to hold an undivided and equal interest in the said real estate previously mentioned.

"That Miss Laura M. Zimmermann is to deed to Mrs. Sarah R. Korte one lot of 30 ft. width free of all incumbrances which lot lies joining Mrs. Sarah R. Korte's home on Sec. Ave. East.

"That Miss Laura M. Zimmermann further agrees to give to Mrs. Esther M. Korte one note of $800.00 drawing 8 per cent interest from date, due on or before May 8th, 1909, as Miss Laura M. Zimmermann may determine. The interest on said note to be paid annually.

"Further, That Miss Laura M. Zimmermann agrees to pay in money to Mrs. Rose L. Swengel ½ the difference in value between the Rondell and Westport real estate as determined by the legally appointed and named appraisers, named by the probate court before whom the will in question is being probated.

"Further, Mrs. Rose L. Swengel and Laura Zimmermann agree to issue deeds to Mrs. Sarah R. Korte and Mrs. Esther M. Korte within two weeks after the said real estate falls lawfully to them or when the probate court invests in them title and right to said property.

"This contract as entered into between and among ourselves, uninfluenced, Mrs. Sarah R. Korte, Mrs. Esther Korte, Mrs. Rose Swengel and Miss Laura Zimmermann, is exactly as we agreed to among ourselves and are willing to subscribe our names to the same and stand individually and collectively on this contract as being final as to the absolute settlement between ourselves, on the contest of the late John G. Zimmermann's will, * * *

Miss Laura Zimmermann,
Mrs. Rosa Swengel,
Mrs. Esther Korte,
Mrs. Sarah Korte.

"Signed and sealed May 8-06 at"

[1, 2] The following is fully established by the evidence herein: The parties to this action are sisters. Their father died possessed of a large amount of real estate, the larger part situate in Brown County, S. D., but some situate in Winona County, Minne-

sota; he left a will by which the real estate in Brown County was divided between the two appellants, while to each of the respondents there was given a very small bequest. Probate proceedings were commenced in Winona County, and before any had been instituted in this state, respondents filed a contest to the admission of the will to probate in Winona County. A very few days thereafter the four sisters met and entered into an oral agreement, very specific and full in all its details, whereby in consideration of respondents agreeing to dismiss the contest then pending and to interpose no objections to the probating of the will in any court, appellants agreed that each would convey to respondents a quarter section of farm land in Brown County, S. D., the quarter to be conveyed by Rosa being known in the family as the "Rondel Quarter," that to be conveyed by Laura being the north quarter section of a half-section farm known in the family as the "Westport farm;" that Laura should convey to Sarah a certain agreed tract of land in the city of Aberdeen; and that Laura should pay, or, at her option, should give Esther her note for $800.00, the agreed value of the city property to be deeded to Sarah. The land above mentioned was a portion of the real property received by appellants under their father's will. The time for the conveyance of said land and for the payment of said money was fixed dependent upon the date when the real property should be set over by proper decree to the appellants. It was also agreed between the two appellants that Laura should pay to Rosa the difference in value between the two quarter sections to be by them conveyed to respondents, and they agreed that this difference should be the difference in values as found by the appraisers who should appraise said lands in the probating of the estate. This oral agreement was sufficiently definite and certain in its terms as to permit of its specific enforcement if it had been in writing and therefore valid under the statute of frauds. The sisters further agreed that they would have their agreement reduced to writing. For this purpose they visited the office of a party, not a lawyer, and induced him to undertake to reduce their agreement to writing. They gave to him the data for such writing and, in accordance with their statements, he prepared the writing which they all signed. The writing, as prepared and signed, was "just as we told him to write it," and was as re-

spondents understood its contents to be when they signed same; but all parties intended to have a written contract that should express the agreements that had been entered into among them, and it is clear that it is owing to the fact that they did not know the writing needed to be more definite and certain (if it did need to be) that the writing was not made sufficiently definite and certain.

Appellants' brief seems to be based largely upon the contention that §1311 C. C.—our statute of frauds in relation to the sale of real property or some interest therein—is involved in the questions presented upon this appeal. They seem to especially rely upon the opinion in Shumway v. Kitzman, 28 S. D. 577, 134 N. W. 325, as laying down propositions of law in conflict with the holdings of the trial court herein. The Shumway case presented the question of whether the various written memoranda—mainly in the form of letters—disclosed that the minds of the parties to said action had ever met upon the terms of any contract in relation to the land involved in such action; in that case there arose no question upon the admission of evidence to explain the meaning of any term used in the various memoranda, neither was there presented any question of the reformation of such written memoranda. In the case now before us, the statute of frauds is in no manner involved; there is no question presented, upon this written memorandum or agreement, that would not be involved herein if the statute of frauds was not a part of the law of this state; without such statute, if two parties, after oral negotiations, should see fit to reduce their agreement to writing, such writing would supersede and take the place of such oral negotiations, and if an action was thereafter brought upon such written agreement, the plaintiff would have to stand or fall upon such writing as signed or seek the reformation thereof; regardless of such statute, there could be no specific performance of a contract for the conveyance of land unless such contract met the requirements of the statutes relating to specific performance of obligations, §§ 2339-2348 C. C.

[3, 4] Section 2344 C. C. declares the obligations which cannot be specifically enforced, among them being: "An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." Was the memorandum signed by these parties such as to disclose the precise act or acts

to be done by the parties hereto? There is absolutely no uncertainty as regards the acts to be done by respondents; it is certain that appellants were to convey to respondents three tracts of land coming to them from their father's estate, and the time for such conveyance is fixed by the contract; it is certain that Laura is to give Esther a note for an amount certain, due at a time certain and bearing a rate of interest certain. Respondents contend that they ha a right by oral testimony, to prove what tracts of land were covered by the descriptions used in the writing, even though they had not sought a reformation of the contract; that "Parol evidence is admissible to identify real property under the descriptive terms adopted by the parties in their agreement to designate it," and they cite many authorities in support of their contention. It is well to bear in mind the wide distinction between the receipt of oral testimony for the purpose of aiding in the interpretation of the words of a writing, and the receipt of such testimony as a basis for the reformation of a writing; although in the case before us, if the testimony received was properly admissible for either purpose, there was no reversible error in establishing the above facts thereby. As noted by Wigmore in §§2458-9 of his great work on Evidence, there is a chance for much confusion in using the terms "intention" and "meaning" when referring to the same thing— the "sense" in which a party or parties have used certain words— the word "intention" being also used in referring to the "will" of a party exercised in the use of a certain word or words. Whether the parties to a writing "intended" or "willed" to use the language of the writing is a matter entirely foreign to the question of the proper interpretation of such language, but very material and relevant to an issue as to right of reformation; upon the other hand, the "meaning" or "sense" of the words used is the proper subject for inquiry in attempting to interpret a writing, while it may have no bearing whatsoever upon the question of whether a a writing should be reformed so that it conform to the language "intended" or "willed" to have been used. Are respondents right in their contention that parol evidence, showing what property it was intended should be conveyed by appellants, was properly admissible? As stated in Sponberg v. Bank, 15 Idaho 671, 99 Pac. 712: "The rule * * * is that parol evidence is admissible to show all the facts and circumstances attending the transaction, and to identify

the property with reference to which a contract is made." In Vol.
I. (14th Ed.) Greenleaf on Evidence, §287, after announcing in
substance, the rule as quoted above, the learned author continues:

"In the simplest case that can be put, namely, that of an in-
strument appearing on the face of it to be perfectly intelligible,
inquiry must be made for a subject-matter to satisfy the description.
If, in the conveyance of an estate, it is designated as Blackacre,
parol evidence must be admitted to show what field is known by
that name;" and in §288 the author says:

"If the language of the instrument is applicable to several
persons, to several parcels of land * * * or the terms be vague and
general, or have divers meanings, * * * ; in all these and the like
cases, parol evidence is admissible of any extrinsic circumstances,
tending to show what person or persons, or what things, were intended
by the party, or to ascertain his meaning in any other respect."
In Hollis v. Burgess, 37 Kan. 487, 15 Pac. 536, the trial court ad-
mitted parol evidence to show what was included in the term "Snow
Farm," and the appellate court said:

"The land which formed the subject of the contract was de-
scribed in the letters as the 'Snow Farm' and it is objected that
the description is too uncertain. The general doctrine regarding
the certainty of description required under the statute of frauds,
contended for by counsel for plaintiff in error, is not questioned.
It is not essential, however, that the description should be given
with such particularity as to make a resort to extrinsic evidence un-
necessary. If the designation is so definite that the purchaser
knows exactly what he is buying, and the seller knows what he is
selling, and the land is so described that the court can, with the
aid of external evidence, apply the description to the exact prop-
erty intended to be sold, it is enough. Fry, Spec. Perf. §209;
Pom. Cont. §90. The property in controversy was commonly des-
ignated as the 'Snow Farm.' It was so known and spoken of by
all the parties at the time of the negotiations, as well as before and
since that time. The description could be connected with the land
without difficulty, and no doubt or dispute could arise regarding
either its location or extent."

In Preble v. Abrahams, 88 Cal. 245, 26 Pac. 99, 22 Am. St. Rep.
301, the land was described as "forty acres of the eighty acre tract
at Biggs." The trial court admitted parol evidence of another trans-

action pertaining to one forty acres of this eighty in order to show which forty was intended to be covered by the contract before the court. The appellate court approved of the ruling of the trial court, and cited in support thereof the following from Pomeroy on Contracts, §227 note:

"It is not strictly accurate to say that the subject matter must be absolutely certain from the writing itself, or by reference to some other writing. The true rule is, that the situation of the parties and the surrounding circumstances, when the contract was made, can be shown by parol evidence, so that the court may be placed in the position of the parties themselves; and if then the subject matter is identified, and the terms appear reasonably certain, it is enough."

See also the discussion of this question found in §§2470-4 Wigmore on Evidence. Wigmore refers with approval to the leading case of Miller v. Travers, 8 Bing. 244, wherein it was said:

"The cases to which this construction [Ambiguitas verborum latens verificatione suppletur] applies will be found to range themselves into two separate classes. * * * The first class is, where the description of the thing devised, or of the devisee, is clear upon the face of the will; but upon the death of the testator it is found that there are more than one estate or subject matter of devise, or more than one person whose description follows out and fills the words used in the will. As where the testator devises his manor of Dale, and at his death it is found that he has two manors of that name, South Dale and North Dale; or where a man devises to his son John, and he has two sons of that name. In each of these cases respectively parol evidence is admissible to show which manor was intended to pass and which son was intended to take."

[5-7] We are therefore of the opinion that the court committed no error in the receipt of parol evidence which tended to prove the meaning or sense of the words used. But, paraphrasing the words of the court in Pitcher v. Hennessey, 48 N. Y. 415; "If we were wrong in this conclusion, yet the court did not err in allowing such proof for the reformation of the contract," because certainly, if it should be conceded that the words used were so indefinite and uncertain that their meaning or sense could not be established by oral testimony, certainly respondents are not without some rem-

edy; they surely can ask that the writing itself be reformed so as to set forth in sufficient detail and with sufficient definiteness the very agreement that had been entered into. As before noted, the oral agreement was sufficiently certain in all its terms to comply with §2344 C. C. Was it not proper to show that such a contract was entered into; that the parties intended, "willed," to reduce the same to writing, which would have rendered it a valid contract; that their failure to do so was owing to a mistake of the parties in believing that the writing prepared and signed by them was a sufficient declaration of the agreement that had been entered into? Appellants insist that the evidence received failed to establish any ground for reformation for the reason that it established the fact that the writing signed was exactly as the parties wanted and understood it. It must be borne in mind that this is not a case where the parties never reached an agreement sufficiently definite in its terms; if it were, equity could grant no relief as it will not make contracts for parties, even though their failure to reach an agreement was owing to mutual mistake. But here we have a contract, full and explicit in all its terms; the parties thereto willed to reduce such contract to writing; that which they willed to do was not accomplished owing to the ignorance of all parties, including the party who drafted the contract, as to what was necessary to be included in the writing. What reason can possibly be advanced why equity should not carry out the will of these parties even though in order to do so it must reform the writing? If the writing is not sufficient to carry out the intent of the parties, then it is as much a contract entered into without the consent of the parties thereto as though the mistake had been one of fact. Our Code relating to "Consent" provides § 1196 C. C.: "An apparent consent is not real or free when obtained through: * * * 5. Mistake." §1205. "Mistake may be either of law or fact." §1207. "Mistakes of law constitute a mistake within the meaning of this article only when it arises from: 1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law;" Against such a mistake equity does and should grant relief.

We find the following announced in 34 Cyc. 914:

"Where, after making an agreement, in the process of reducing it to writing, through mistake of law, the instrument fails

to express the agreement actually made, there is ground to reform to the same extent as if the failure of the instrument to express the contract was caused by mistake of fact, since such mistake of law prevents the real contract from being embodied in the instrument. This includes a mistake arising from ignorance or misapprehension of the parties as to the legal effect of the words or language used to express their intention."

At §115 Story's Equity Jurisprudence, it is said:

"Where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement previously entered into, but which, by mistake of the draftsman, either as to fact or to law, does not fulfill that intention, or violates it, equity will correct that mistake, so as to produce a conformity to the instrument."

At § 845 Pomeroy's Equity Jurisprudence, it is said:

"If on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. · Among the ordinary examples of such errors are those as to the legal *effect of a description of the subject matter,* and as to the import of technical words and phrases; but the rule is not confined to these instances."

In Abraham v. North German Ins. Co., (C. C.) 40 Fed. 717, the court says:

"When, however, the mistake lies, not in a misunderstanding of the principles of the law as controlling the subject of the contract or the rights of the parties connected therewith, but merely

in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a court of equity will correct."

In Lansing v. Com. Un. Assur. Co., 4 Neb. (unof.) 140, 93 N. W. 756, the court said:

"In the case at bar, even though it should be found that there is a failure of proof as to a mistake of fact, it is apparent that there was a misconception of the parties as to the legal import of the language used to effectuate the contract which they intended to make. There is no doubt, however, under the evidence, as to the actual contract—the contract which both parties had in mind —and it follows that equity has power to grant relief against the mistake."

. In Wis. M. & F. Ins. Co. Bk. v. Mann, 100 Wis. 596, 76 N. W. 777, the court says:

"The following rule is land down by standard text writers, substantially copying the language of Mr. Justice Washington in Hunt v. Rousmaniere's Adm'rs, 1 Pet. 1, and has been frequently approved by this court: 'Where an instrument is drawn or executed, which professes or is intended to carry into execution an agreement * * * previously entered into, but which, by mistake of the draftsman either as to fact or law, does not fulfill that intention, or violates it, equity will correct that mistake so as to produce a conformity to the agreement.' Many cases may be cited to support the contention made by appellant's counsel, that a mistake of law is not remediable in equity, but they do not fit this case. They refer to a mistake of law in the making of a verbal contract as distinguished from a mere mistake in reducing the contract to writing through some misapprehension of the legal meaning of the language used. The rule applies where the contract is written so as to express the agreement as understood, though the understanding were wrong through ignorance of law; it does not apply where the contract is fully understood, but is incorrectly expressed in the writing through ignorance as to the legal import of the language selected by the parties for that purpose. Though there is some confusion in the adjudicated cases through failure to correctly make the distinction referred to, it is so well defined that accuracy in the application of the legal principles involved may be obtained without serious difficulty."

To the same effect are the following: Auer v. Mathews 129 Wis. 143, 108 N. W. 45; C. & A. Ry. Co. v. Green, (C. C.) 114 Fed. 676; State v. Rivers 124 Iowa 17, 98 N. W. 785; Evants v. Strode's Adm., 11 Ohio 480, 38 Am. Dec. 744; Wall v. Meilke, 89 Minn. 232, 94 N. W. 688; Hapgood v. McCausland, 120 Iowa 218, 94 N. W. 469.

[8] Appellants further contend that under the express provisions of §2340 C. C. the respondents were not entitled to the relief granted, for the reason that the judgment did not, and under the circumstances of the case, could not, decree the performance of Laura's covenant to pay Rosa one-half the difference between the values of the "Rondell" and "Westport" quarters. §2340 C. C. reads:

"Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

Counsel argue, and cite authorities in support of the proposition, that, inasmuch as there had to be an appraisal of these two properties before the amount to be paid by Laura to Rosa could be determined, the court could make no decree directing such payment. Conceding that, if Rosa were asking a decree directing such payment, she could not obtain same owing to the fact that no appraisement had been made, yet that fact is immaterial under the facts of this case. Here we have virtually two contracts; the one between respondents upon the one side and appellants upon the other; the other between the two appellants. It is this first contract with which we are concerned—the mere fact that these parties saw fit to incorporate into the one writing both of these contracts in no manner affects respondents' right to have the contract, to which they are parties, enforced. Having performed their covenants, they are entitled to the performance by appellants of their covenants to them regardless of the performance or non-performance of any agreement which appellants made with one another though the consideration of such agreement may have been the performance of some one or more covenants in their contract with respondents. What we have said

above also disposes of appellants' contention that the contract was not mutual, and that a contract must be mutual as to obligation and as to remedy. The contract between respondents upon the one side and appellants upon the other is mutual.

[9] Respondents contend that even though the writing had been invalid, owing to the statute of frauds, that they have so performed their part of the oral agreement as to entitle them to the specific performance thereof by appellants. Appellants contend that in order for part performance to take an oral agreement out from the provisions of the statute of frauds, it can only be when the part performance itself is only referable to the contract—that is, where evidence of part performance would in itself be evidence that there was some contract upon which it was based; and they contend that the fact that respondents dismissed the contest in Winona county and interposed none in Brown county, would in no manner prove the existence of a contract wherein they had agreed to dismiss such contest and to refrain from another contest. While the rule contended for undoubtedly holds where there is no written evidence of the contract, it surely can not prevail in a case where there is a writing signed by the parties establishing that the part performance was in compliance with the agreement of the parties. Even though the writing may not be sufficient under the statute of frauds, it is clearly competent as evidence of the oral agreement and to connect the acts of respondents with such agreement.

[10] Appellants further contend that the consideration for their covenants was not an adequate consideration—such a consideration as entitled respondents to the specific performance of such covenants. That the dismissal of an action or will-contest, or a promise to refrain from bringing an action or from contesting a will, is an adequate consideration is fully established by the authorities. Grochowski v. Id. 77 Neb. 506, 109 N. W. 742, 13 L. R. A. (N. S.) 484, 15 Ann. Cas. 300; Rector etc. v. Teed, 120 N. Y. 583, 24 N. S. 1014; Blount v. Wheeler, 199 Mass. 330, 85 N. E. 477, 17 L. R. A. (N. S.) 1036. That such consideration was adequate in fact is shown, at least prima facie, from the fact that appellants considered it of sufficient value to them so that they were willing to enter into their covenants in consideration thereof. It must also be remembered that by their agreement, these sisters were

apparently seeking to effect a settlement of a matter over which there was a dispute pending among the membership of the decedent's family. This fact of itself adds to the adequateness of the consideration. Sup. Assembly, etc., v. Campbell, 17 R. I. 402, 22 Atl. 307, 13 L. R. A. 601.

The judgment and order appealed from are affirmed.

McCoy, J., took no part in this decision.