SELLERS *v.* PERRY.

1. CANCELLATION OF INSTRUMENTS — MORTGAGES — NEGOTIABLE INSTRUMENTS—FRAUD.

Evidence tending to show that complainant was the principal beneficiary under the will of a deceased testator and that in order to avoid litigation with defendants, who would have been heirs at law of the testator, complainant executed a mortgage on the devised property in full settlement of any adverse claims of defendants, that certain representations were made to induce complainant to execute the settlement or adjustment, to the effect that no other parties would or could contest the will, considered and *held*, in the light of contradictory proofs, insufficient to sustain the burden of proof resting on the complainant.

2. SAME—COMPROMISE—ESTATES OF DECEDENTS—WILLS.

Legatees under a will may make valid agreements to forbear a contest and the same are favored by the law when made in good faith. A contract whereby one interested in defeating the probate of a will agrees to interpose no objection thereto is not void unless collusively made in fraud of other parties in interest.[1]

3. SAME—MORTGAGE—PLEADING.

Lacking a claim of the benefit of a cross-bill, defendant's answer would not sustain nor complainant's pleadings warrant the granting of affirmative relief to the mortgagors in the form of a decree enforcing a promise or contract included in the mortgage to pay part of the expense of administering the will, and of litigating the issue of testamentary capacity with other heirs at law: only in the event of the mortgagee attempting to foreclose would the right be enforced against defendants.

4. APPEAL AND ERROR—BRIEF—CONDUCT OF COUNSEL.

No criticism as to the alleged standing of the respective counsel was proper in the briefs of either party and a reference to a legal directory or other source of information relating to the professional standing of the lawyers was unwarranted.

---

[1] As to validity of contract between devisees and legatees not to contest probate of will, see note in 13 L. R. A. (N. S.) 484.

Appeal from Tuscola; Beach, J. Submitted April 18, 1916. (Docket No. 93.) Decided June 1, 1916.

Bill by Minnie Hall Sellers against Ella Perry for the cancellation of a mortgage and note. From a decree for defendant, complainant appeals. Affirmed.

*H. H. Smith* (*Seth Q. Pulver*, of counsel), for complainant.

*E. E. Anneke*, for defendant.

STONE, C. J. The bill of complaint herein was filed in October, 1914, to set aside for alleged fraud a real estate mortgage and accompanying promissory note made and executed by complainant to the defendant on December 16, 1911, for $5,000. The matters leading up to the making of these instruments are somewhat in dispute, but the following facts appear:

Jacob Woodman, a resident of Akron, Tuscola county, died on November 21, 1911, at the age of 81 years. He left an estate, which, after the payment of his debts, was of the value of upwards of $20,000, which consisted of the farm inventoried at $10,000 and personal property aggregating $10,000 and upwards. He left a will bearing date June 10, 1911. Under the terms of the will the complainant was devised the farm above referred to, and also all live stock and farm tools and implements owned by decedent at the time of his death, and there was bequeathed to two sisters of the complainant $250 each; and it was provided that the residue of the estate should be equally divided between the defendant and her sister, Maud Gilmore.

In case of no will the estate in question would have been divided into four equal portions, one to the defendant, one to Maud Gilmore, her sister, one to the complainant and her two sisters as children of a deceased daughter, and one portion to the children of Cynthia Jubar, another deceased daughter of said

Woodman. The last-named children are referred to in the record as "the Jubars." They were, by the terms of the will, cut off from any share of the estate.

The complainant had lived in the home of Jacob Woodman from the time she was 14 months old to the time of his death, and the death of his wife, which occurred 19 days after his death; and the will provided that complainant should live with and care for testator and his wife upon the farm during the life of each of them. At the time of the death of said Woodman, complainant was 24 years of age and was married, living with her husband upon the said farm.

The bill of complaint states that the said will was offered for probate to the probate court of said county, and came on for hearing on or about December 15, 1911, and the hearing was adjourned from time to time until January 16, 1912. The bill further states that the defendant and her sister, Maud Gilmore, being dissatisfied with the said will and claiming that it was unjust, and that the testator was mentally incompetent, and that they intended to contest the probate thereof, induced the said complainant to go with them to the office of an attorney at law, at Bay City, and there to execute the real estate mortgage above referred to in settlement of their claim, and that the said Maud Gilmore was to share equally with the said defendant in the division of the proceeds of said mortgage. The bill further states that the sole consideration, if any, for making said promissory note and mortgage was that no contest of said will by any person could possibly be made, and that no contest of said will would be made, and that said attorney, acting for said defendant, represented to said complainant that in no event would a contest of said will be made by any one if the mortgage was so given, and that relying upon said assurances of said attorney, and because of the threats and false promises of said defendant and

Maud Gilmore, complainant did sign said promissory note and mortgage; that when the hearing of the probate of said will came on in the probate court there was a contest made by the sisters of the complainant and the Jubar heirs.

The bill further represents that at said hearing the said attorney who had drafted said note and mortgage assured complainant that, as there was a contest being made of the probate of said will, said promissory note and mortgage had been destroyed by him. The bill alleges that upon the hearing in the probate court, which involved a large expense to complainant, said will was duly allowed for probate; that thereupon the contestants appealed to the circuit court for said county, and a trial was had of such appeal at the September term, where said will was again sustained, in which complainant was again involved in a large amount of expense in securing witnesses and counsel which necessitated the expenditure of a large amount of money, exceeding the sum of $1,200; that at the hearing in the circuit court the said attorney, who claimed to have had possession of said note and mortgage for the defendant and her sister, again assured complainant that said mortgage had been destroyed, that said mortgage was recorded in the office of the register of deeds of said county immediately after the trial in the circuit court, to wit, on October 8, 1912, having been left for record by said attorney of said defendant and Maud Gilmore.

The bill further states that at the time of making said promissory note and mortgage, the said defendant and Maud Gilmore and their said attorney well knew that a contest of said will would be had, and that the assurances of said attorney as to who could contest a will were by him well known to be false, and intended to mislead complainant, he well knowing that complainant would rely upon his statement as to the law,

and that he and said defendant and her sister connived together to procure from complainant the said promissory note and mortgage by false, fraudulent, and misleading representations, and without any consideration whatever therefor, and that said mortgage and promissory note were in fact obtained by said cunning devices, and without intending to give, or giving, any consideration therefor.

After praying that the defendant be required to answer the bill of complaint, the bill further prayed that the said defendant might, by order and decree of the court, be required to deliver up for cancellation the promissory note and mortgage mentioned in the bill of complaint, and that she be enjoined by order and injunction of the court from in any manner selling, assigning, or disposing of the said note and mortgage, and, further, that said note and mortgage be declared void and of no effect, and that said defendant be required to discharge the same of record, concluding with a prayer for general relief.

The answer of the defendant denies substantially the averments of the bill, and states that the said note and mortgage were given solely because the defendant and her sister, Maud Gilmore, agreed to make no contest of said will, and agreed to allow said will to be admitted to probate, and specifically denies that any representation whatever was made to the effect that no contest could possibly be made to said will by any person, or that no contest of said will would be made by any one, and denied that said attorney assured complainant that in no event would a contest of said will be made by any one if said mortgage was given, and denied that said mortgage was given because of any threats and assurances, as alleged in said bill. By the answer the defendant also admitted that a contest of said will was made in the probate court for said county, the contestants appealing to the circuit court, where

they were defeated; but defendant denied that it was at all necessary for complainant to employ counsel, or go to any expense whatever in said proceedings, or that she was compelled to do so; that she did the same voluntarily and without consulting defendant, and any sums paid out by her were unnecessary, as defendant employed counsel to assist at the trial in establishing said will, and that counsel so employed had been paid by the estate, and that if complainant had paid out any such sum as claimed by her, the same was unnecessary and unreasonable. Defendant further, by her answer, admitted that she did not attend the hearing on the probate of said will, and averred that she never had been asked to contribute to any expense incurred by complainant.

Upon the hearing of the instant case, it was undisputed that at the time of the execution of the note and mortgage, and as a part of the same transaction, the following agreement was entered into by the parties:

"Whereas, Jacob Woodman departed this life on the 21st day of November, 1911, leaving surviving him Minnie Hall Sellers, granddaughter, party of the first part herein, and Maud Gilmore and Ella Perry, daughters, parties of the second part herein, and leaving a last will and testament, which said last will and testament is now on file in the office of the probate court for Tuscola county, Michigan, awaiting probate thereof;

"And whereas, the parties hereto think that the said Jacob Woodman did not in the said will make a fair and equitable distribution of his property as between the parties hereto, and whereas the parties of the second part hereto being dissatisfied with the terms of the said will propose to contest the probate of the same for the reason that the said will does not make a fair and equitable distribution of his property, and also for the reason that they claim that at the time the said will was made the said Jacob Woodman was incompetent to make the same;

"And whereas, the parties hereto are desirous of avoiding a contest of the said will and coming to an

amicabie and friendly settlement of all property rights;

"Now, therefore, in consideration thereof, it is agreed as follows: The said party of the first part hereby agrees to pay to each of the parties of the second part the sum of two thousand dollars, and to pay to Myrtle Hall Landon and Deborah Hall Hammel, her sisters, each the sum of two hundred and fifty dollars, and as provided for in paragraph three of said will, and also to pay an amount not to exceed five hundred dollars toward funeral expenses, nursing and doctors' bill incurred in the last sickness of the said Jacob Woodman and Rhoda Woodman, his wife, now deceased. It is further agreed that each of the parties hereto shall each pay one-third of all probate and administration expenses of the will of the said Jacob Woodman. In consideration of the said payments to be made as aforesaid by the said party of the first part, the said parties of the second part hereby agree to make no contest and consent to the admitting to probate of the will of the said Jacob Woodman.

"Witness the hands of the parties hereto this 16th day of December, 1911.

> "MINNIE HALL SELLERS.
> "MAUD GILMORE.
> "ELLA PERRY.

"In presence of:
  "M. L. COURTRIGHT.
  "JAMES GILMORE."

"STATE OF MICHIGAN, } ss.:
  "County of Bay

"On this 16th day of December, 1911, before me, a notary public in and for said county, personally appeared Minnie Hall Sellers, Ella Perry and Maud Gilmore, to me known to be the persons who executed foregoing instrument, and acknowledged that they executed the same as their free act and deed.

> "M. L. COURTRIGHT,
> "Notary Public, Bay County, Michigan.
"My commission expires April 1, 1913."

Upon the hearing there was a sharp conflict in the testimony as to the representations made by Mr. Courtright, it being claimed by the complainant, as

191 Mich.—40.

alleged in the bill, that Mr. Courtright (who seems to have been a relative of some of the parties, and upon friendly terms with all of them, he having transacted business for the testator in his lifetime), represented to complainant that if this settlement was made and said note and mortgage given, there could be no contest of the will; that neither the Jubar heirs nor any other persons interested could contest the will in case the mortgage was given, and that he subsequently represented, when a contest was made, that the note and mortgage had been destroyed.

These representations were denied by Mr. Courtright and other witnesses who were present, who testified that what he did say was that, in his opinion, the Jubar heirs and others could not successfully contest the will, and that he never represented or stated to the complainant or her attorney that the note and mortgage had been destroyed.

It appears, we think, from the evidence that the defendant and her sister, in good faith, intended to contest the probate of the will, claiming that it was not only unjust, but that the testator was mentally incompetent to execute it, and that the consideration for the making of the note and mortgage was that they should desist from contesting the will, and consent to its probate. It is undisputed that they not only did not contest the probate of the will, but that they rendered such assistance as was in their power, by way of furnishing documentary evidence and the employment of counsel, in the allowance of said will, and the same was duly allowed in both courts, and the contestants were defeated.

In our opinion the burden of proof upon these contested questions was not sustained by the complainant at the hearing. The consideration for the note and mortgage appears to have been that the defendant and her sister, Maud Gilmore, should make no contest of

the will, but should consent to the admitting of the same to probate.

It is, we think, well settled in this State that legatees under a will, and persons having such an interest in the estate as to entitle them to contest the instrument, may make valid agreements to forbear a contest, and such contracts are favored by the law when made in good faith. *Conklin* v. *Conklin,* 165 Mich. 571 (131 N. W. 154).

A contract, whereby one interested in defeating the probate of a will agrees to interpose no objection thereto, is not void as against public policy, unless made collusively and in fraud of other parties interested in the estate. *Grochowski* v. *Grochowski,* 77 Neb. 506 (109 N. W. 742, 13 L. R. A. [N. S.] 484 and note, 15 Am. & Eng. Ann. Cas. 300).

Neither by the pleadings, proofs, nor briefs of counsel has the question been raised whether this promissory note and mortgage were void as opposed to public policy, so as to bring the case within the principle announced in *Conklin* v. *Conklin, supra,* and we have not considered that question for the reasons stated, and we herein express no opinion upon that question.

Upon the hearing in the court below the bill of complaint was dismissed and complainant has appealed; and it is urged by complainant's counsel that if this court should find that there was not a total failure of consideration for such note and mortgage, that at least relief should be granted complainant to the extent of allowing her two-thirds of the expense of the litigation in establishing said will under that portion of the agreement, above quoted, which reads as follows:

"It is further agreed that each of the parties hereto shall each pay one-third of all probate and administration expenses of the will of said Jacob Woodman."

The answer does not claim the benefit of a cross-bill, and does not ask to enforce or foreclose this mortgage. In our opinion the pleadings are not so framed as to entitle the complainant to this relief in this suit.

The bill is not framed according to any theory of an abatement or reduction of any portion of said mortgage for the reason urged; and, as the record stands, there appears to be no warrant for modifying the decree below, as asked for. *Agar* v. *Streeter*, 183 Mich. 600, 609 (150 N. W. 160, L. R. A. 1915D, 196).

Should the mortgagee proceed to enforce or foreclose this mortgage, this defense under the agreement would doubtless be open to complainant. It appears that no part of the mortgage debt has been paid, and that four installments of $500 each, with interest, are now past due.

This record discloses a sharp conflict in the testimony of the attorneys who tried the instant case in the court below. They both testified in the case. Other counsel for the defendant in the brief filed in this court, in commenting upon this conflict of testimony, asks this court to go entirely outside the record and inquire as to the character and standing of the respective attorneys, by consulting Martindale's American Law Directory, and their respective ratings therein are stated at length in the brief. This is a most unwarranted and improper statement to appear in a brief filed in this court. Such practice is indefensible and cannot have the sanction of the court. Such reference should be eliminated from the brief, and perhaps would justify the court in striking the entire brief from the case.

The decree of the court below is affirmed, with costs to the defendant.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.