NELLIE HEATON WALL and Another v. HERMAN MEILKE and Others.[1]

May 8, 1903.

Nos. 13,434—(58).

### Correcting Mistake in Instrument.

There is no statute of limitations in this state barring the bringing of an action for the reformation and correction of a written instrument upon the ground of mistake.                                           -

### Laches.

It is an essential element of laches that a party to be charged with it should have knowledge of the matter involved, or, after notice, have failed or omitted to obtain knowledge where it might be found, or that there must have been circumstances which should have induced an inquiry from such party concerning it.

### Mistake in Expressing Meaning.

Where parties, in reducing an agreement to writing, fail, by mistake, to embody their intention in the instrument, either because they do not understand the meaning of the words used or their legal effect, equity will grant relief by reforming the instrument; and it matters not whether such mistake be called one of law or one of fact.

### Same—Guernsey v. American Insurance Co. Overruled.

To reform and correct a written instrument upon the ground of mistake, the evidence must be clear and convincing. It is not necessary that the proof must establish the mistake clear of all reasonable doubt. Guernsey v. American Insurance Co., 17 Minn. 83 (104), overruled upon this point.

### Trial Court Sustained.

*Held,* applying the rule above stated, that the court below was justified in reforming and correcting the deed involved in this action by striking out a trust clause found therein, and inserting another clause, which expressed the true intent of the parties at the time the deed was executed and delivered.                                           .

Action in the district court for Blue Earth county for partition of land. The case was tried before Quinn, J., who made findings of fact, and as conclusions of law found that defendant Mathilde

[1] Reported in 94 N. W. 688.

Meilke was the owner in fee of the premises in question and that neither plaintiffs nor the other defendants had any interest therein. From an order denying a motion for a new trial, plaintiffs, and defendants Julius and Frank Heaton, appealed. Affirmed.

*S. B. Wilson* and *Fowler & McNamara*, for appellants.

*Pfau & Pfau* and *L. W. Prendergast*, for respondents.

COLLINS, J.

This is an action in partition, brought after the determination of Phelps v. Heaton, 79 Minn. 476, 82 N. W. 990. These plaintiffs, Nellie Heaton Wall and Bertha Maude Heaton, and two of these defendants, Julius and Frank Heaton, were defendants in that case, which was brought against them in 1889, while they were minors, and residents of the state of Wisconsin, for the purpose of reforming a certain deed described in the complaint therein. This defendant George S. Heaton, and his wife, were the grantors. in that deed, and defendant Wealthy Phelps was grantee. The premises in controversy are eighty acres of the one hundred sixty described and conveyed by that instrument. In this action Julius. and Frank Heaton were made defendants, and they filed answers, practically cross-complaints. Thereupon Mrs. Phelps and George S. Heaton were made defendants, and, in substance, their answers were the same as that interposed by the defendants Herman and Mathilde Meilke, husband and wife. Herman purchased the eighty acres in March, 1880, receiving a warranty deed, in which Andrew J. Heaton, who died in the year 1890, and who was the father of these appellants, and his wife and the defendant Wealthy Phelps, were the grantors, and defendant Herman grantee.

The court below found the facts in substantial accordance with the answer of the defendants Meilke, to the effect that prior to 1867 George S. Heaton purchased the land for his brother, Andrew J.; that he held the title thereto in his own name for Andrew J. until he conveyed it, in October, 1867, to defendant Wealthy Phelps, who paid him therefor the sum of $650, belonging to Andrew J., which conveyance was the deed containing a trust clause involved in the action above mentioned as commenced in 1889, and

which deed was then corrected and reformed by the judgment and decree of the court in which that action was brought. The specific finding was that it was the intent and purpose of the parties to this deed to insert the following language, instead of the trust clause:

"To have and to hold the same in trust, nevertheless, for Andrew J. Heaton, * * * with full power and authority, however, hereby vested in said Wealthy Phelps, upon said Andrew J. Heaton joining her in the conveyance, to mortgage, sell, and convey said real estate for the use and benefit of said Andrew J. Heaton;"

and that the land was conveyed to the defendant Herman Meilke in the supposition and belief that it contained the clause last above mentioned, instead of the trust clause; that said defendant Herman thereupon entered upon and took possession of the property, and has continued in possession ever since, excepting as to a small portion, which he has sold.

The court also found that the possession of Meilke had continuously been open, notorious, visible, hostile, continuous, exclusive, uninterrupted, peaceable, and adverse, in good faith, and under color of title, he claiming to be the absolute owner of the eighty acres; and also the value of the improvements made upon the land between the years 1880 and 1900 by Meilke; and also the amount which he had paid within those years as duly assessed and levied taxes, as well as the amount which he had paid within the six years last preceding the commencement of this action. The court also found, in effect, that defendant Julius Heaton was thirty years of age, that Frank was twenty-nine, that Nellie was twenty-five, and that Maude was twenty-two when this action was brought; and that in September, 1889, Julius and Frank Heaton executed and delivered a quitclaim deed of said premises, in which defendant Meilke was named as grantee, which deed was duly recorded in November of that year. It was also found that the eighty acres had been duly conveyed to defendant Mathilde prior to the commencement of this action.

As a conclusion of law, the court ordered that the deed in question be reformed and corrected so as to conform to the intention

of the parties as disclosed, and that the trust clause therein should be changed and corrected in accordance with the finding of fact above quoted. The Heatons thereupon made a motion for a new trial, which was denied by the court below, and thereupon they appealed to this court.

The first question discussed by counsel in their briefs is that relating to the defense of adverse possession. It appears that the court below found that as against these appellants the defendants Meilke had been in adverse and hostile possession of the tract of land for more than the statutory period of fifteen years. That these defendants had exclusive possession of the premises from the time of the execution and delivery of the deed is not disputed by counsel, but it is contended that Meilke's possession under a grant from the life tenant could not become adverse to their clients, so as to ripen into title, until the statutory period had elapsed after the decease of Andrew J. Heaton, which, as above stated, occurred in January, 1890, less than fifteen years before the commencement of this action; our attention being called to the provisions of G. S. 1894, §§ 4276, 4284, 4278, 4294, 4369, and 4393, all of which sections have been in force in this state since 1866, and for some years prior thereto.

We are not compelled to pass upon this feature of the controversy, because we can come directly to a consideration of the counterclaim for reformation and correction of the Heaton-Phelps deed of 1867, and dispose of the case. This counterclaim was in fact the substance of the complaint and the decree in Phelps v. Heaton, supra. The contention of the appellants' counsel is that the statute of limitations commenced to run against the counterclaim for reformation when the mistake was made—that is, at the time the deed was drawn; that, in any event, the limitation to reform and correct the deed cannot be extended longer than the period within which an action must be brought to determine adverse claims, viz., fifteen years; and also that the claim for reformation and correction was barred by laches, without reference to the statute of limitations. It is further claimed that it is not such an equity as will permit a reformation and correction of a written instrument; that from the findings it was a mere mistake

of law, not coupled with any mistake of fact, and that a mistake of the parties as to the legal effect of an instrument is not a ground for its reformation and correction. There is a further claim that the evidence was wholly insufficient to justify the relief granted, because equity will in no case reform an instrument on the ground of mistake, unless the evidence is clear and conclusive, and unless such mistake is established by the testimony "clear of all reasonable doubt"; a number of cases being cited, among them Guernsey v. American Ins. Co., 17 Minn. 83 (104).

Counsel for both parties seem to assume that an action for the reformation and correction of a written instrument upon the ground of mutual mistake may be barred by a statute of limitations in this state; but in this they are in error. There is no statute applicable to an action for reformation and correction of an instrument upon the ground of mistake. An action upon the ground of fraud is covered by G. S. 1894, § 5136, subd. 6, where it also provided that such a cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting fraud. But, if we had such a statute, it would not begin to run, as against defendants Meilke, until the time they discovered the mistake, or, at any rate, until the time when, by the exercise of due diligence, such mistake ought to have been discovered by them, in the absence of any provision of a statute of limitations on the subject otherwise fixing the time when it shall begin to run. Story, Eq. Jur. (12th Ed.) § 1521a; Ormsby v. Longworth, 11 Oh. St. 653; Craufurd v. Smith, 93 Va. 623, 23 S. E. 235, 25 S. E. 657. In this particular case the mistake was not discovered by the Meilkes until the year 1900. It is further argued that, in any event, the limitation can be extended no longer than the period within which an action must be brought to determine adverse claims to real property; but, if true, this contention is disposed of by again calling attention to the time when Meilke first discovered the mistake.

There is absolutely nothing to the claim that the counterclaim for reformation and correction was barred by laches on the part of defendants Meilke. From the time they entered into the

occupancy of this land, in 1880, under a deed which gave them color of title, they were in peaceable and exclusive possession of the entire tract of land. At no time during a period of about twenty years could laches be imputed to them for delay in resorting to a court of equity for protection against the real title. Their possession was open and notorious, and during this period of time they were making extensive improvements upon the eighty acres. Prior to the beginning of this action, their title or rights were not brought in question by these plaintiffs, or by any other persons. They were not made defendants in any proceedings which had been instituted or brought in question prior to its commencement. They had no notice, so far as the record shows, of the motion in the Phelps-Heaton case, which resulted in setting aside and vacating the judgment therein entered, which had stood unquestioned and unchallenged until February, 1899— almost ten years—in the office of the clerk of court in the county in which the land was situated.

It is undoubtedly an essential element of laches that the party to be charged with it should have knowledge of the matter involved, or, after notice, have failed or omitted to obtain knowledge where it might be found, or that there must have been circumstances which should have induced an inquiry from such party. Marcotte v. Hartman, 46 Minn. 202, 48 N. W. 767; Hayes v. Carroll, 74 Minn. 139, 76 N. W. 1017. Here the Meilkes had no knowledge of the real facts, nor were there circumstances which should have induced an inquiry upon their part. For ten years of this time they would have found the judgment had they gone to the records, which they were not obliged to do, and could have safely relied upon it.

We now come to the contention that the evidence was wholly insufficient to justify the order of the court reforming and correcting the deed, and this may be considered as it has been by counsel, first, as a question of law; and, second, as one of fact. It is well settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief in an action to reform and correct a written instrument, and that if a party enters into a transaction affecting his interests or rights under and in igno-

rance of, or in error with respect to, the rules of law controlling the facts, the courts, generally speaking, will not relieve him from the consequences of his mistake. Mr. Pomeroy, in his work on Equity Jurisprudence, states the rule, and asserts that the reasons for it are obvious. But this rule, like many others, is subject to modifications and limitations, and equity frequently exercises its jurisdiction on the occasion of mistakes of law in cases where there was no fraud, concealment, misrepresentation, undue influence, or violation of confidence. Equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might, or even would, have had if they had been more correctly informed as to the law. Therefore, if the agreement expresses the thought and intention of the parties at the time and in the act of concluding their contract, no relief, affirmative or defensive, will be granted with respect to it upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention was embodied or expressed.

But it is equally well settled that there are particular instances in which equity will grant defensive or affirmative relief from mistakes of law pure and simple. The difficulty is in distinguishing the cases and in properly classifying them. If, however, the parties to an agreement, while in the process of reducing it to writing, fall into error, and the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere, and grant the appropriate relief to the same extent as if the failure of the writing to express the real contract was caused by mistake of fact. In such a case there is no mistake as to the legal import of the contract actually made, but the mistake of law has prevented the real contract from being embodied in the written instrument; the legal import of the language used is not that intended. "In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and opera-

tion of the terms or language employed in the writing." 2 Pomeroy Eq. Jur. (2d Ed.) § 845, and cases cited. This is the rule in this jurisdiction, although the language used may be precisely that agreed upon. Smith v. Jordan, 13 Minn. 246 (264).

In such causes courts of equity are not limited to affording relief in cases of mistake of fact. A mistake, as to its legal effect, in the use of technical language in a deed, may be relieved against in equity. Clayton v. Freet, 10 Oh. St. 545, and cases cited. It has also been said that: Where parties, on reducing an agreement to writing, failed to embody their intention in the instrument by mistake, either because they did not understand the meaning of the words used or their legal effect, equity will grant relief by reforming the instrument, and it matters not whether such a mistake be called one of law or one of fact. Pitcher v. Hennessey, 48 N. Y. 415, 424. In the case at bar the parties supposed that they had embodied in the deed the agreement which had been made between them, and, if they failed to do so because they used language which did not express their intent and purposes, but which had an entirely distinct and different meaning, wholly at variance with their agreement, it may be characterized as, and is, a mistake of law, coupled with a mistake of fact.

This brings us to a consideration of the testimony upon this question. It is contended that the assignments of error found in their brief are insufficient to present all of the points raised by appellants' counsel. This is true to a certain extent, but we have disregarded this technicality. The testimony was that of Mrs. Phelps and George S. Heaton, two of the grantors mentioned in the deed, and the only living parties thereto; and, in addition to this, the answer of Andrew J. Heaton in the action brought against the minors, introduced in evidence. The learned trial court found this testimony sufficiently clear and convincing to justify its finding as to the mistake. Another court might have found it insufficient. But from an examination of it, in connection with the admitted facts and circumstances, we are unable to come to the conclusion that it was not sufficiently clear and conclusive to warrant the reformation and correction of the deed. It appeared, if these witnesses are to be believed, that it was the

intention and agreement of all the parties to the Heaton-Phelps deed of 1867 that the grantee, Mrs. Phelps, should have the right to mortgage, sell, and convey the property for the use and benefit of Andrew J. Heaton, should he join in the conveyance, and, further, that it was understood by all of them that the clause therein contained was of that legal import. And none of them understood that the language which was actually used in the deed created a trust which would effectually prevent the alienation of the land, if so desired by the grantee and Andrew J. Heaton. It is true that the answer of the latter was not signed or verified by him, but it was the act of his attorney, and was properly received in evidence for what it was worth. It may not have been very important or potent, but it had some value. It was made soon after the Meilkes received their deed, in an action brought to obtain precisely the relief prayed for in the case now under consideration. Heaton was then alive, appeared by an attorney, who filed the answer for him, and we must assume, in the absence of any proof to the contrary, that the attorney fairly represented his client, and was fully authorized to make the answer he did. Some weight, also, must be given to the fact that as early as 1889 the grantors and grantee of that deed all insisted that a mistake had been made, and that the deed should be reformed and corrected so as to conform to the intention of the parties.

We have referred to the early case in this court of Guernsey v. American Ins. Co., supra, in which it was said that a mistake, in order to warrant the reformation and correction of a written instrument, must be established "clear of all reasonable doubt." That case has never been followed in this court, and certainly a part of the language used was erroneous. The true rule is that equity will not reform an instrument on the ground of mistake unless the evidence is clear and convincing. This rule has frequently been announced since the Guernsey case as the proper rule to apply, and this cause is to be measured by it. Our conclusion upon this branch of the appeal renders it unnecessary to consider the validity of the equitable claim made by defendants Frank and Julius Heaton, and, of course, makes it unnecessary

for us to consider the rights of the defendants Meilke under the occupying claimants act.

We have considered the assignments relating to the admission of testimony, and find that there are no reversible errors.

For the reasons stated, the order of the court below refusing a new trial to these plaintiffs must be, and hereby is, affirmed.