# MICHAEL O'ROURKE v. FELIX JAMES O'ROURKE and Others.[1]

July 9, 1915.

Nos. 19,294—(192).

**Deed — question of delivery.**

1. The question whether a deed is delivered is a question of intent and usually one of fact; and in this case it is *held* that whether the plaintiff and his wife, parents of one of the defendants, delivered a deed conveying substantially all their property to their son in consideration of support, etc., was one of fact for the court trying the case.

**Court should have given equitable relief.**

2. Though the court found that the deed was not delivered, the plaintiff having alleged facts tending to entitle him to equitable relief if the deed had been delivered, and having offered proofs in support thereof, and the defendant having alleged facts showing him entitled to equities though the deed was not delivered, such equities appearing from the record, the court having possessed itself of the controversy as a court of equity should have determined the whole controversy between the parties and entered a decree determining the rights of all.

Action in the district court for Dakota county for the surrender and cancelation of written instruments and to adjudge plaintiff to be the owner of certain real estate described in the complaint. The case was tried before Johnson, J., who made findings and ordered judgment in favor of plaintiff. From an order denying the motions of defendants O'Rourke to dismiss the action for want of jurisdiction to enter a decree therein for defect of parties, and to reopen the case and take further testimony, or for a new trial, defendants O'Rourke appealed. Reversed.

*S. J. & S. D. Donnelly, D. E. Dwyer* and *Thomas D. O'Brien,* for appellants.

*T. P. McNamara* and *A. E. Horn,* for respondent.

[1] Reported in 153 N. W. 607.

DIBELL, C.

This action was brought by the plaintiff to compel the surrender of a certain agreement, and for a decree annulling and cancelling it, and adjudging plaintiff to be the owner of the property described in it. There were findings for the plaintiff and the defendants appeal from the order denying their motion for a new trial.

1. On July 26, 1909, the plaintiff Michael O'Rourke and the defendant Mary O'Rourke, his wife, signed and acknowledged an agreement conveying to their son, the defendant Felix O'Rourke, certain lands, by which agreement the son covenanted, among other things, to care for them during life, give them proper support and a comfortable home, furnish them decent burial, and pay $1,500 to one sister and $100 each to five others within five years after the decease of the plaintiff and his wife, these sums to be a charge upon the land. The agreement was left with the defendant James F. Geraghty. The plaintiff claims that it was never delivered. The defendants claim that it was delivered and that then it was left with Geraghty for safe keeping. The court found that it was not delivered.

The deed was prepared in St. Paul with studious care and its provisions were stated in much detail. It was the kind of agreement or deed sometimes made by parents, and often unwisely, to one of their children, intending to insure to themselves a comfortable home and support during life with the giving of which the grantee is charged; and intending that at their death their property shall belong, discharged of obligation, to the child remaining at home and caring for them in their last years. It was acknowledged before Geraghty as notary public. At that time it was very carefully gone over by the plaintiff and his wife and Felix and one change, deemed to be of importance, was made in it. The plaintiff says it was not delivered. He is the only one who makes such claim. The proof of delivery is ample. The fact of its delivery is consistent with substantially all that occurred before and afterwards. The subsequent course of conduct of the parties was in accord with the theory that such an agreement was a subsisting one, and it is difficult of explanation upon the theory that there was not a delivery of the

agreement. The question of delivery, however, is a question of intent and is usually one of fact. 1 Dunnell, Minn. Dig. § 2664. The court found that there was no delivery and under the recognized rule we accept its finding.

2. It might seem that, if we sustain a finding that there was no delivery of the agreement, the case should end. The question of delivery, however, was not the only issue tendered by the plaintiff. The plaintiff alleged that the defendant Felix had failed to comply with the terms of the agreement. Issue was taken; and the defendant affirmatively set forth a number of facts entitling him to consideration. He alleged, for instance, that for 11 years prior to the date of this instrument he had, at the request of the plaintiff, resided upon the farm and worked and labored for the plaintiff without a fixed or stated compensation, but under a promise that if he would remain and work the farm and help care for his parents he would be properly rewarded, and that the land and personal property upon it would eventually be his. Felix, who is now 37 years of age, always lived at home. As early as 1898 the plaintiff had made a will in which he devised his farm to Felix, with conditions in it that he properly care for his parents. One reason for making the agreement was the unwillingness of Felix to rely upon an uncertain will. To some extent the court took evidence upon the question whether Felix had abided by the agreement. It refused to re-open the case so as to allow Felix to introduce further testimony to entitle him to relief.

The plaintiff has presented his cause to a court of equity, invoking the equitable powers of the court to procure the cancelation and surrender of an instrument which he made upon great deliberation. While the finding of the court is that the instrument was not delivered, the fact is not disputed that Felix and the other parties proceeded for a number of years as if it were a subsisting instrument, fixing the rights of the plaintiff and his wife and Felix, nor is it disputed that a will had been made for the benefit of Felix. That Felix, because of this will and pursuant to this agreement, spent many of the years of his life at home, caring for the old people and keeping up the farm, while his brothers were establishing homes

and acquiring farms of their own, is uncontroverted. The fact that Felix was of right entitled to something was in the mind of the trial court when it referred in its memorandum to compensation which ought to go to Felix "for the work and energy he has bestowed upon the farm, in the preservation of the estate, and the care and kindness to the parents, in the hope given him by the father on coming of age that eventually under the condition stated he would, after the death of the parents, be given the farm."

When the plaintiff comes into a court of equity for relief against Felix, he is there just as much to do Felix equity as he is to get equity from him. The court which gives the plaintiff equitable relief is capable of giving Felix equitable relief. Relief can be given both in this action. There was some trouble between the plaintiff and his son—how serious is not very clear. Perhaps it is exaggerated. The plaintiff's wife is a defendant and an appellant against her husband. The family are not in accord.

Whatever the rights of the parties are, they should be determined in this action. We do not anticipate what the findings may be on the new trial. We do not suggest what relief one party or the other should be given. They are in a court of equity which molds its relief to meet particular situations. The court in cases involving agreements of this kind, often improvidently made, is not exacting in its requirements as to pleadings and practice in getting at the heart of the controversy and seeing that a right result is reached. In doing this avail will be made of the broadest powers of a court of equity. In Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871, the court, in referring to the application of the remedies of a court of equity to cases involving situations resulting from family settlements, and speaking from the viewpoint of the wronged parents, said:

"The rules concerning the application of this equitable remedy are quite well settled in this jurisdiction. Before the relief involved therein can be granted, it must appear that the parties have failed to perform their covenants in substantial and material particulars, and that it would not be inequitable to grant the relief sought. On the other hand, where it appears, as in this case, that there has been

such a repudiation of the contract and failure in the performance thereof as to amount practically to a failure of consideration for the deed, the remedy should be applied."

In Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L.R.A. (N.S.) 608, the court said:

"There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for."

In McKenzie v. Dunsmoor, 114 Minn. 477, 131 N. W. 632, and in Johnson v. Paulson, 103 Minn. 158, 114 N. W. 739, the court recognized the right of the grantee in such an agreement to relief though he had failed to perform in full.

We are of the opinion that the rights of the parties should be worked out in this action. On the showing Felix has some equities, or at least a claim to equities to which the court should listen.

Order reversed.

SCHALLER, J. took no part.