## FRANK L. WALSH v. AMY A. WALSH AND OTHERS.[1]

### November 21, 1919.

### No. 21,468.

**Cancelation of deed — dismissal of action equitable.**

> A mother conveyed a tract of land to her son in consideration of his verbal promise to support her. The son ·faithfully performed his promise until his death 23 years later. His widow had no knowledge of the agreement and provided no support for the mother after his death, and was never asked to do so. Five years later the mother brought suit to cancel the conveyance for failure to furnish support, but died before it came to trial and her executor was substituted as plaintiff. *Held*, that, in view of the circumstances disclosed by the record, a cancelation of the conveyance would be inequitable and will not be decreed; *held* further that neither the pleadings nor the evidence furnish a basis for any other relief and that the court correctly dismissed the action.

Action in the district court for Hennepin county to cancel plaintiff's deed. The case was tried before Molyneaux, J., who made findings and as conclusion of law dismissed the action. Plaintiff's motion for an order amending the conclusions of law or for a new trial, was denied. From the judgment dismissing the action, plaintiff appealed. Affirmed.

*Benjamin Drake, N. E. Pardee* and *P. L. Solether,* for appellant.

*W. L. Hursh* and *William B. McIntyre,* for respondents.

TAYLOR, C.

This is an action to annul a conveyance of land made in 1887 by Mary A. Walsh to her son Burke E. Walsh, in consideration of his verbal promise to support her during the remainder of her life. The court rendered judgment dismissing the action, and the executor of her last will and testament appeals.

[1]Reported in 174 N. W. 835.

Edward F. Walsh died intestate in 1883 possessed of a farm in Hennepin county consisting of two forties known as the "north eighty," another known as the "west forty" used mainly for pasturage, and another known as the "home forty." There was also a small fraction of less than two acres adjoining the "home forty" and practically treated as a part of it. The farm buildings were located on the "home forty" which with the "west forty" constituted the homestead. At the death of Mr. Walsh the title to the farm passed to his widow, Mary A. Walsh, and to his three sons and three daughters, all of whom were of age except the youngest son. Shortly after their father's death, the five adult children conveyed all their interest in the farm to their mother by deed dated July 24, 1883. The three daughters and the second son married and established homes for themselves. The mother with the oldest son, Burke, and the youngest son, Frank, remained on the farm and continued to operate it, the mother doing the housework, and Burke, with such assistance as Frank was able to render, doing the farm work. There had been some sort of an understanding in the father's lifetime that each boy should eventually have 40 acres of the farm.

In 1887 the children formed the impression that an old gentleman, whose name is not given in the record, was paying attention to their mother with a view of marriage, and that the farm was the inducement which led to these attentions. With this in mind they urged the mother to divide the farm between the boys and as the result of several family conferences she executed three deeds. The daughters seem to have been the most suspicious of the old gentleman and to have taken the most active part in bringing about the execution of these deeds. By one of these deeds, the mother conveyed to her second son, James D., the undivided one-half of the "north eighty." By the second deed she conveyed to her minor son, Frank L., all her remaining interest in this 80 which, with the interest which he had inherited from his father, gave Frank the undivided one-half thereof not conveyed to James D. By the third deed, she conveyed to her oldest son, Burke, the undivided five-sixths of the homestead, consisting of the "west forty" and the "home forty," saving and reserving to herself, however, her life estate in the "home forty." The other one-sixth of the homestead was held by Frank,

subject to his mother's life estate therein. Subsequently Frank and James made a partition of the "north eighty" between themselves.

After the making of the above deeds, the mother, Burke and Frank remained in the old home and farmed the homestead and Frank's forty the same as before. This continued until 1901, a period of 14 years. They derived their support, or the principal part of it, from the farm. The proceeds of the products sold went into a common fund from which the household expenses were paid and the needs of all three supplied. For a time the mother seems to have taken an important part in the management of affairs and to have handled the common fund, but she gradually relinquished the management of the farm and the handling of the funds to Burke. In 1901, Burke, who had previously married, completed a new house on the "home forty" near the old house, and from that time until his death resided therein with his wife and family. Frank and his mother continued to reside in the old house. From this time on Frank and Burke, while working together much as before, kept their financial affairs separate, in part at least, Frank taking the proceeds of his forty and Burke the proceeds of the homestead. Both contributed to the support of the mother. In 1910 Burke died and immediately thereafter his wife with her two children removed to the home of her parents where she has ever since resided. Frank and his mother continued in the old home. One of the daughters and her invalid husband came to reside with them, so that the daughter could care for both her mother and her invalid husband. The new house has remained unoccupied, except as Frank has used it for the storage of farm products. After the death of Burke, Frank farmed his own forty and the "home forty," and with the aid of his sister cared for and supported his mother until her death.

During the lifetime of Burke the best of relations seem to have existed between him and his mother, and it is undisputed that he provided for her wants to the extent of his ability. After his death the relations between his brother Frank and his mother and sisters on one side and his widow on the other seem to have become strained, and in April, 1915, his mother brought this action against his widow and minor children, who were his sole heirs at law, to set aside and annul the conveyance made by her of the "home forty" and adjoining fraction, on the ground that the con-

veyance to him of this land had been made in consideration of an agreement on his part to support her during her natural life, and that this agreement had not been performed. She died before the action came to trial and her son Frank, as executor of her will, was substituted as plaintiff.

The court found as a fact that the mother executed the three deeds in reliance upon an agreement by Burke to support her during her life, and we think the evidence is sufficient to sustain this finding.

The court also found as a fact that Burke had faithfully performed his agreement up to the time of his death, and we are of the opinion that this finding is also sustained by the evidence.

The court also found as a fact that after Burke's death his wife, Amy A. Walsh, and his children, Russell E. and Edmund Walsh, the defendants in this action, never contributed anything toward the support of his mother, Mary A. Walsh, but further found that these children were respectively only four and six years of age at his death, and that his widow, the defendant Amy A. Walsh, never knew that he had assumed any obligation to support his mother until the commencement of this action, and had never been requested, either by her or by anyone else, to furnish her any support. These findings are amply supported by the evidence.

The court further found that as Burke had faithfully performed his agreement from the time of entering into it, in 1887, until his death in 1910, and as his mother is now dead and no equitable adjustment can be made, "it would be inequitable and unfair to cancel said deed of the 'home forty'" and rendered judgment dismissing the action.

The agreement for support is not mentioned in the deed nor in any writing, but rests upon the verbal testimony of the present plaintiff and his sisters, to the effect that in the family conferences, preceding the execution of the deeds, Burke assured his mother that he would support her. Although the mother retained a life estate in the land in controversy, the conduct of the parties during a period of more than 20 years leaves no doubt that both understood and intended that Burke should have the use of it in providing a livelihood for himself and his mother.

Owing to the peculiar character of such transactions, and the fact that usually they are between the aged and their near relatives, and result from the confidence which one reposes in the other, conveyances of prop-

erty in consideration of an agreement for future support are placed in a class by themselves; and the courts, when called upon to enforce rights growing out of such contracts, endeavor to give effect to the intention of the parties so far as possible, and to protect both by affording each such relief as in equity and good conscience he is entitled to under the facts of the particular case. The courts consider each case on its own facts, and in the exercise of their broad equitable powers, will grant whatever relief will most nearly work out substantial justice. Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L.R.A.(N.S.) 608; O'Rourke v. O'Rourke, 130 Minn. 292, 153 N. W. 607. The conveyance may be canceled, on condition that the grantee be reimbursed for expenditures of which the grantor has received or will receive the benefit, if this will produce an equitable result and the rights of the grantor cannot be properly safeguarded otherwise, or, in proper cases, the grantee may be permitted to retain the property, on condition that he comply with the requirements of the contract and make compensation for past delinquencies. Johnson v. Paulson, 103 Minn. 158, 114 N. W. 739. But the conveyance will not be canceled where it would be inequitable to do so. Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871.

The case of McKenzie v. Dunsmoor, 114 Minn. 477, 131 N. W. 632, in its essential facts, is much like the instant case. In 1896, Mr. and Mrs. Dunsmoor conveyed the premises there in controversy to Stephen W. Budd in consideration of an agreement by him to support them. Budd and his wife took possession of the land and performed the contract until the death of Budd in 1900. His widow continued to perform until the death of Mr. Dunsmoor in 1902. Shortly thereafter she rented the premises to one Henderson under an agreement that, in lieu of rent, he should care for and support Mrs. Dunsmoor. The latter soon became dissatisfied, and took up her residence with one Empey, where she resided until her death in 1908. Out of her own means, she paid the expenses of her husband's last sickness and funeral and for her own support while residing with Empey. The widow of Budd was requested by Empey to take Mrs. Dunsmoor back and care for her, but refused to do so. The court said that the deed should not be canceled, where a substantial performance of the contract rendered such cancelation inequitable, and held that, in view of the long-time performance, the failure of the widow to

pay some bills which she ought to have paid and her refusal to take Mrs. Dunsmoor back and care for her, did not warrant a conclusion that the consideration for the deed had failed, or that she had failed to substantially comply with the conditions on which the property was conveyed, and that the cancelation of the deed would be too drastic a remedy and not equitable. We think this reasoning applies with equal if not greater force in the present case, and that the facts do not warrant a cancelation of the conveyance.

In the McKenzie case the court further said:

"The pleadings preclude granting defendants any relief other than a cancelation of the contract. No facts are alleged to form the basis of any lien or claim for repayment of money paid by Mrs. Dunsmoor for her support and expenses, and no relief of this character is asked."

The same situation exists in the instant case. The only relief sought was the cancelation of the contract, and there is neither allegation nor proof of any facts upon which to base a claim for the value of the support not furnished, even if such a claim survived the death of the mother and could be enforced for the benefit of her estate, which is doubtful in view of the decision in Penas v. Cherveny, 135 Minn. 427, 161 N. W. 150, L.R.A. 1917E, 655.

The trial court correctly disposed of the case and its judgment is affirmed.