# MARY J. CARSON v. DELMER CARSON AND OTHERS.[1]

July 16, 1926.

No. 24,932.

**Finding sustained that son's fraud had induced his mother to deed him her homestead.**

1. The finding that plaintiff's son had breached his contract to support her, and by false representations had induced her to execute a mortgage and convey her homestead is sustained by the evidence.

**What relief will be granted to parent for breach of child's contract to give support.**

2. Where a parent conveys property to a child on specified conditions and in consideration of support, the court will endeavor to accomplish the purpose intended and will grant the relief which will most nearly work out substantial justice to both parties.

**Relief granted by trial court justified by the facts.**

3. The facts justify the relief granted by which the mother is revested with title to the homestead and given compensation for its use, and the son retained the property intended to be conveyed to him.

**Laches.**

4. The claim of laches is not sustained.

**Son not entitled to raise point on appeal.**

5. Requiring the mortgagee to proceed against the other land before resorting to the homestead, although not binding because the mortgagee is not a party, cannot be urged as error by the son.

Appeal and Error, 4 C. J. p. 692 n. 89.
Cancelation of Instruments, 9 C. J. p. 1203 n. 85; p. 1205 n. 13; p. 1256 n. 12; p. 1260 n. 82, 89; p. 1264 n. 20.
Equity, 21 C. J. p. 221 n. 24; p. 224 n. 8; p. 245 n. 9.

Action in the district court for Renville county by plaintiff through her guardian to set aside transfers of real estate and personal prop-

[1]Reported in 209 N. W. 507.

erty and for other relief. The case was tried before Qvale, J., who granted relief in part. Defendants appealed from an order denying their motion for a new trial. Affirmed.

*Frank E. McAllister*, for appellants.

*Frank Hopkins*, for respondent.

TAYLOR, C.

This is a suit brought by plaintiff through her guardian to set aside certain transfers of real estate and personal property made to her son, defendant Delmer Carson, and for other relief. The Prudential Insurance Company which holds a mortgage on the real estate in question is named as a defendant, but was not a party to the trial and is not a party to this appeal. Its mortgage is admitted to be valid. Defendant Marie Carson is the wife of defendant Delmer and had no part in the transactions in controversy, and has no interest in the property involved except such as arises out of the marriage relation. The term defendant as used hereafter will designate the defendant Delmer. The court made extended findings and granted the relief sought in part. A motion for a new trial was denied and this appeal followed. Defendant contends in substance that the findings are not sustained by the evidence, and that the relief granted is not justified by the facts.

Plaintiff was 86 years of age at the time of the trial in September, 1923. She had been disabled by an injury many years before and had become so feeble that she was unable to appear in court and her deposition was taken at her home and read at the trial. Her husband died in 1895, leaving a farm of about 600 acres in Renville county upon which the family had resided for many years. There were 11 children, of whom defendant Delmer is the youngest. Plaintiff purchased from the children their respective interests in the farm and continued to operate it herself until she made the agreement with Delmer hereafter set forth. Prior to the transactions involved herein she had disposed of 240 acres of the land, conveying 160 acres thereof to her son Hugh who had previously assisted her in operating the farm, but she still remained the sole owner of 341

acres including the homestead. The homestead comprised the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter of section 22 in township 113 of range 32. The farm buildings are located adjacent to the line between these two forties, the dwelling house being upon the 40 first described and the barn being across the line upon the other 40.

The court found that plaintiff had sustained a severe injury prior to March, 1911, which at her advanced age disabled her from continuing in the active management of the farm; that reposing full confidence in defendant she made an oral contract with him whereby she agreed to transfer to him the personal property on the farm and convey to him all the land except the 80 acres constituting the homestead, and give him the use of the homestead for nine years without rent, but reserving for herself three rooms in the dwelling house; and whereby defendant, as the consideration therefor, agreed to assume and pay the encumbrances against the land of about $6,500, and plaintiff's other indebtedness of about $1,600; and further agreed to support plaintiff and provide her with everything necessary for her comfort during the remainder of her natural life. Pursuant to this agreement plaintiff, on March 18, 1911, executed a deed to defendant for the purpose of conveying to him the land outside the homestead and transferred the personal property to him, and he thereupon took possession of the entire farm and of the personal property and ever since has retained possession thereof. As before stated the homestead consisted of the 40 on which the dwelling house is located and the 40 adjoining it on the west on which the barn is located. This is the tract which it was agreed that plaintiff should retain and neither of these forties should have been included in the deed. But the description in fact inserted in the deed included the 40 on which the barn is located, and the tract omitted therefrom is the 40 on which the dwelling house is located and 40 adjoining it on the south, a part of which is in a slough. The court found that plaintiff executed the deed believing that it described and included only the land outside the homestead; and further found that defendant knew that the deed actually described and included

the 40 on which the barn is located and fraudulently concealed that fact from plaintiff.

One of the parcels of land conveyed to defendant was lot 6 of section 15 containing 66 acres adjoining the land in section 22. Defendant sold this lot in 1913 and received for it the sum of $5,729.62.

In February, 1921, a mortgage for the sum of $8,000 was executed by plaintiff and by defendant and his wife to the defendant Prudential Insurance Company upon the remaining 275 acres including the homestead. The court found that defendant induced plaintiff to sign this mortgage by falsely representing to her that it was necessary for him to raise the sum of $300 to pay a balance due his brother William for his interest in the land, and that she signed the papers in the belief fraudulently induced by defendant that she was merely guaranteeing the payment of that sum as a surety for defendant, and without any knowledge that the papers were a note and mortgage or for the sum of $8,000.

In January, 1922, plaintiff executed to defendant a deed conveying the 80 acres not included in the deed of 1911 and which plaintiff supposed was the homestead. There is a vague reference in the testimony to a dispute with another landowner concerning the division of certain land which had been reclaimed by means of a drainage ditch. The court found that defendant induced plaintiff to execute the above deed by representing that unless he had the deed for use in a lawsuit about to be tried he would be liable for a considerable amount of costs and his brother Hugh would lose a piece of land, and that he needed the deed for only a short time and would reconvey the land to her through his brother Hugh, and further found that plaintiff executed the deed believing and relying upon these representations, and also found that they were wholly false and were made for the purpose of defrauding plaintiff out of the land so conveyed.

The court also found that defendant had had the possession and use of the homestead and received the rents and profits therefrom for four years after the expiration of the period during which he was entitled to the possession and use thereof without rent, and

that $400 per year amounting to the sum of $1,600 was a fair rental for the use of the homestead during such four years.

Plaintiff was feeble and infirm when she made the original contract and in need of more care and attention than she received from defendant and his wife thereafter. Her unmarried daughter Grace, who was employed as a housekeeper at Cottonwood, owned a small dwelling in the village of Fairfax. In the winter following the making of the contract an arrangement was made at the instance of other children, but with defendant's consent, by which plaintiff removed to Fairfax to live with Grace and Grace gave up her employment and returned to Fairfax for the purpose of caring for her mother. Plaintiff lived with Grace in the home provided by Grace continuously thereafter. The court found that after plaintiff's removal to Fairfax she had been supported mainly by her daughter Grace; and that defendant had failed to support or provide for her except to furnish a few of the necessaries at infrequent intervals; and that he had wholly breached his contract. Plaintiff herself was probably responsible to some extent for defendant's failure to perform. She wanted him to free himself from debt and with that purpose in view sought to avoid causing him expense. She seems to have been unwilling to call upon him for needed supplies of food and fuel or to procure them on his credit; and in her enfeebled condition seems not to have realized that furnishing them was a heavy burden upon Grace whose means were quite limited.

When certain of plaintiff's other children learned of the deed conveying the homestead to defendant and that plaintiff had been divested of all her property, an application was made to the probate court for the appointment of a guardian on the ground that she was not competent to manage her business affairs; and on May 16, 1922, J. I. Carson, another son, was duly appointed guardian of her estate, and shortly thereafter brought this suit. At the conclusion of the trial, by agreement of counsel, the court withheld its decision for a time in the hope that the parties might be able to make a settlement of the controversy. They failed to do so however and on November 8, 1924, the court made and filed its decision.

The court directed that judgment be entered setting aside and annulling the deeds insofar as they conveyed to defendant the two forties constituting the homestead, and declaring that plaintiff is the owner in fee and entitled to the possession thereof free and clear from any and every claim of defendant thereto; also requiring the insurance company to enforce its mortgage against the remainder of the property included therein before resorting to the homestead; also giving plaintiff a specific lien upon the land other than the homestead for the amount of this mortgage until the homestead shall be released and discharged therefrom; and also for the recovery by plaintiff from defendant of the sum of $1,600 together with costs and disbursements.

There is little if any controversy concerning the terms of the original agreement between defendant and his mother. Defendant denies making any misrepresentations to his mother at any time, and asserts that she executed the several instruments in controversy with full knowledge of their purpose and of what they contained. Perhaps the severe strictures made upon defendant's conduct may not be fully merited, yet we find sufficient evidence to sustain all the essential findings of fact and therefore they must stand.

We find no basis for the claim of laches. It appears and is practically undisputed that plaintiff reposed unlimited trust and confidence in defendant as her son and believed whatever he told her, and that in consequence of such trust and confidence she executed without question or investigation whatever papers he requested. Th deceptions which the court finds were practiced upon her do not appear to have been discovered until the other children intervened shortly before the suit was brought. "The pith of laches is unreasonable delay in enforcing a known right," or a right which in view of all the circumstances ought to have been known. Although a long period elapsed after the making of the original deed, we cannot say under the circumstances here disclosed that plaintiff is chargeable with laches in failing to find out the true situation. Wall v. Meilke, 89 Minn. 232, 94 N. W. 688; Briggs v. Buzzell, 164 Minn. 116, 204 N. W. 548.

It is urged that, as the insurance company was not a party to the trial, the court could not adjudge that it be required to enforce its mortgage against the other lands included therein before resorting to the homestead. Of course the insurance company will not be bound by the judgment, but it is not here complaining and defendant is not in position to urge that objection. Moreover the court merely required the insurance company to do what the law would require it to do, at the demand of plaintiff, without a decree to that effect.

Defendant complains that the relief granted is inequitable and unwarranted. The courts recognize that such contracts are sui generis and when called upon to determine controversies arising therefrom endeavor to carry into effect, so far as possible, the purpose the parties intended to accomplish; and to that end in the exercise of their broad equitable powers will grant whatever relief will most nearly work out substantial justice to both parties under the facts of the particular case. Walsh v. Walsh, 144 Minn. 182, 174 N. W. 835; Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L. R. A. (N. S.) 608. This is not a suit to rescind or annul the original contract, but to give plaintiff relief from certain transactions not contemplated by that contract, and by which, in consequence of the unjustifiable advantage taken by defendant of the implicit trust and confidence she reposed in him, she has been divested of all the property which the contract intended that she should retain.

Defendant assumed and has discharged obligations amounting to about $8,100. He has also furnished some of the necessaries for his mother, the amount or value of which is not shown. He has also made somewhat extensive improvements upon one of the homestead forties. He received $5,729 for 66 acres which he sold in 1913. He still retains 195 acres. He had the use of the homestead 80 acres for nine years without rent. He received the personal property on the farm valued by the court at $3,000 and still retains it or its proceeds. While there is no testimony as to the value of the personal property, a statement of what it consisted is given and it clearly had a very substantial value. No claim was made or allowed for failure to furnish support as agreed. We think that the facts as found

warrant the relief granted by the trial court, and we find no ground which will justify this court in interfering therewith.

It is proper to note that plaintiff died in May, 1926, after the cause had been appealed to this court, and that her son J. I. Carson, who was her guardian, has been appointed administrator of her estate and as such has been substituted as plaintiff herein.

Order affirmed.